RENDERED:  OCTOBER 9, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1592-MR

PAUL V. BROOKS, MD                                                                      APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.      HONORABLE ANGELA MCCORMICK BISIG, JUDGE
ACTION NOS. 15-CI-004956 & 17-CI-004859[1]

KENTUCKY BOARD OF MEDICAL
LICENSURE                                                                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, KRAMER, AND TAYLOR, JUDGES.

KRAMER, JUDGE:  Paul Brooks appeals an order of the Jefferson Circuit Court

affirming a final order of indefinite restriction on his medical license issued by the

---

[1] Jefferson Circuit Court Case No. 17-CI-004859 relates to Brooks' separate complaint for violation of the Kentucky Open Meetings Act by the Kentucky Board of Medical Licensure.  Brooks does not argue any matter related to that action in this appeal.

Kentucky Board of Medical Licensure ("KBML").[2]  After careful review, we

affirm.

At the outset, we note that Brooks' brief is noncompliant in several

substantive ways.  To begin, CR[3] 76.12(4)(c)(iv) requires

> A "STATEMENT OF THE CASE" consisting of a
> chronological summary of the facts and procedural
> events necessary to an understanding of the issues
> presented by the appeal, with ample references to the
> **specific pages of the record**, or tape and digital counter
> number in the case of untranscribed videotape or
> audiotape recordings, or date and time in the case of all
> other untranscribed electronic recordings, supporting
> each of the statements narrated in the summary.

(Emphasis added).

Brooks' Statement of the Case contains only one citation to the actual

record.  That citation is to "CR 1-104," which is in reference to his Petition for

Judicial Review.[4]  It fails to cite to any specific page in that 100-plus-page

document for the Court's reference.  The only other citations to the factual basis

for his argument are references to exhibits he has attached to his brief.  Brooks also

makes references to information in several depositions that were taken.  Like his

---

[2] We note that the trial court also found that KBML did not violate the Kentucky Open Meetings Act in its actions.  Brooks does not specifically argue that ruling on appeal; hence, we shall not address it herein.

[3] Kentucky Rule of Civil Procedure.

[4] His citation to CR 1-104 appears two to three times in his brief.

other "citations," he does not cite to the record where to locate these depositions or the specific references in the record where any statements he relies upon in these depositions can be found. Rather, Brooks simply states in footnote six of his opening brief that "[a] disc with these depositions was filed with the trial court." Citations to the exhibits in his appendix and filing a disc with depositions do not fulfill the requirements of CR 76.12(4)(c)(iv) and are not citations to the official record. Thus, Brooks has failed to comply with this rule in any meaningful way.

Even more troubling is the fact that Brooks argues "there is no evidence and there is no administrative record." This is a misrepresentation of the record before us. The administrative record certified by KBML to the Jefferson Circuit Court, which now appears before this Court, is over five hundred fifty pages in length.[5] Brooks also fails to cite to the administrative record at any point in his brief to this Court.

Regarding preservation of error, at the beginning of the "Argument" section of his brief to this Court, Brooks states, in accordance with CR 76.12(4)(c)(v), "[t]his argument was presented to the trial court by Brooks' Memorandum (August 9, 2018; CR pages 348-412)." However, careful review of the record before us shows that, while most of Brooks' arguments are preserved in

---

[5] This is in addition to the record from the Jefferson Circuit Court.

the memorandum cited, his "procedural conundrum" argument is not, although the argument appears elsewhere in the record before us.

For years, the Court has been pointing out deficiencies in briefs and the rationale and importance of adherence to the rules. Over ten years ago, a member of the present panel eloquently wrote:

> Compliance with [CR 76.12] permits a meaningful and efficient review by directing the reviewing court to the most important aspects of the appeal: what facts are important and where they can be found in the record; what legal reasoning supports the argument and where it can be found in jurisprudence; and where in the record the preceding court had an opportunity to correct its own error before the reviewing court considers the error itself. The parties, when acting *pro se*, or their attorneys who appear before us have typically spent considerable time, sometimes even years, creating and studying the record of their case. On the other hand, the record that arrives on the desk of the judges of the reviewing court is entirely unknown to them. To do justice, the reviewing court must become familiar with that record. To that end, appellate advocates must separate the chaff from the wheat and direct the court to those portions of the record which matter to their argument. When appellate advocates perform that role effectively, the quality of the opinion in their case is improved, Kentucky jurisprudence evolves more confidently, and the millstones of justice, while still grinding exceedingly fine, can grind a little faster.

> But the rules are not only a matter of judicial convenience. They help assure the reviewing court that the arguments are intellectually and ethically honest. Adherence to those rules reduces the likelihood that the advocates will rely on red herrings and straw-men arguments—typically unsuccessful strategies. Adherence

-4-

> enables opposing counsel to respond in a meaningful[]
> way to the arguments so that dispute about the issues on
> appeal is honed to a finer point.

*Hallis v. Hallis*, 328 S.W.3d 694, 696-97 (Ky. App. 2010) (footnote omitted)

(Acree, Presiding Judge).

The Court has continued to attempt to educate parties and attorneys on the importance of the rules and the pitfalls of failure to comply with them. The Court recently addressed noncompliant briefing again in detail in *Curty v. Norton Healthcare, Inc.*, 561 S.W.3d 374 (Ky. App. 2018) (Nickell, Presiding Judge).[6] Given the length at which the Court in *Curty* urged compliance with CR 76.12(4)(c), we quote the rationale for the rule and the Court's warnings that leniency should not be presumed.

> CR 76.12(4)(c)[(v)] in providing that an appellate
> brief's contents must contain at the beginning of
> each argument a reference to the record showing
> whether the issue was preserved for review and in
> what manner emphasizes the importance of the
> firmly established rule that the trial court should
> first be given the opportunity to rule on questions
> before they are available for appellate review. It is
> only to avert a manifest injustice that this court
> will entertain an argument not presented to the trial
> court. (citations omitted).

> *Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky. App. 1990)
> (quoting *Massie v. Persson*, 729 S.W.2d 448, 452 (Ky.
> App. 1987)). We require a statement of preservation:

---

[6] Judge Nickell is now a Justice on the Kentucky Supreme Court.

so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration. It also has a bearing on whether we employ the recognized standard of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted.

*Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

. . .

**Failing to comply with the civil rules is an unnecessary risk the appellate advocate should not chance**. Compliance with CR 76.12 is mandatory. *See Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). Although noncompliance with CR 76.12 is not automatically fatal, we would be well within our discretion to strike Curty's brief or dismiss her appeal for her attorney's failure to comply. *Elwell*. While we have chosen not to impose such a harsh sanction, we strongly suggest counsel familiarize himself with the rules of appellate practice and caution counsel such latitude may not be extended in the future.

*Curty*, 561 S.W.3d at 377-78 (emphasis added).

Two years have passed since the *Curty* opinion, and the brief deficiencies have increased. In June of this year, Judge Acree again commented on the volume of noncompliant briefs and wrote as follows:

This Court is weary of the need to render opinions such as this one, necessitated as they are by the failure of appellate advocates to follow rules of appellate advocacy. In just the last two years, at least one hundred and one (101) Kentucky appellate opinions were rendered in which an attorney's carelessness made appellate rule violations an issue in his or her client's case. The

-6-

prodigious number of attorneys appearing in Kentucky's appellate courts lacking the skill, will, or interest in following procedural rules is growing. In 2005, only two (2) Kentucky opinions addressed appellate rules violations. In 2010, the number jumped to eleven (11). In 2015, the number rose slightly to fourteen (14). The average for the last two years is more than three times that. If this is not a crisis yet, it soon will be if trends do not reverse.

We will not reiterate all that has been said too many times before on this subject. If a lawyer is curious about the importance of these procedural rules or the practical reasons for following them, we recommend reading these opinions in chronological order: *Commonwealth v. Roth*, 567 S.W.3d 591 (Ky. 2019); *Koester v. Koester*, 569 S.W.3d 412 (Ky. App. 2019); *Hallis v. Hallis*, 328 S.W.3d 694 (Ky. App. 2010); *Elwell v. Stone*, 799 S.W.2d 46 (Ky. App. 1990).

*Clark v. Workman*, 604 S.W.3d 616, 616-18 (Ky. App. 2020) (footnotes omitted).

There is no doubt that Brooks' brief is deficient in several significant ways. "Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis*, 328 S.W.3d at 696 (citing *Elwell*, 799 S.W.2d at 47). While this Court has spent considerable time on this issue in this opinion, the Court does note that a cursory review on Westlaw in regard to Brooks' counsel does not reveal any prior warnings in regard to noncompliant briefing. Although such is not required, the Court will take this into consideration and will

not strike Brooks' brief, *this time*.  Rather, the Court will review the matter on the merits, but it obviously cannot rely on any factual allegations that Brooks has made that are not supported by citation to the official record.  Counsel should heed this warning and adhere to rules in the future because the leniency given herein may not be extended again.

## Factual and Procedural Background

On December 9, 2010, Brooks' paramour, K.S., died from a drug overdose.  Shortly thereafter, K.S.'s mother filed a grievance with KBML alleging that K.S. went to Brooks for medical treatment and started dating him.  Eventually, the two moved in together.  K.S.'s mother stated she believed Brooks was responsible for K.S.'s death because, she alleged, he wrote prescriptions for pain medications for K.S.; wrote prescriptions for pain medications to himself using another doctor's name and gave those medications to K.S.; wrote prescriptions for K.S. using other patients' names; and stole pain medications from his place of employment for K.S.  KBML began an investigation into the allegations.  During the investigation, the Drug Enforcement and Professional Practices Branch of the Office of the Inspector General identified patterns of concern regarding Brooks' prescription patterns in at least twenty patient files.

KBML's Inquiry Panel A reviewed the investigation and, as a result, issued a complaint against Brooks' medical license on September 2, 2011.  The

complaint charged Brooks with five separate counts of violations of KRS[7] 311.595. The inquiry panel also issued an emergency order of suspension of Brooks' medical license because it found probable cause to believe that his continued practice of medicine would constitute a danger to the health, welfare, and safety of his patients or the general public while the complaint was pending.[8] Brooks did not challenge the emergency order of suspension.

Brooks also faced criminal charges in Montgomery and Jessamine Counties, as well as a medical malpractice lawsuit filed by K.S.'s family. A hearing on the complaint was scheduled by the hearing officer for March 6, 2012. However, Brooks requested a continuance, arguing that it would be "prejudicial to his interests to compel him to testify in the administrative hearing at a time which proceeds [sic] the criminal trial in the same or similar matters." Although KBML initially argued the allegations contained in its complaint were separate and distinct from any criminal matters, KBML eventually agreed to continue the hearing. The hearing officer issued an order continuing the matter generally on February 29, 2012.

In October 2013, Brooks' criminal issues were still not resolved, and a hearing on KBML's complaint had not occurred. At that time, it was also over two

---

[7] Kentucky Revised Statute.

[8] *See* KRS 311.592(1).

years since Brooks had engaged in the active practice of medicine. Pursuant to KRS 311.604, KBML ordered Brooks to undergo a clinical skills assessment by the Center for Personalized Education for Physicians ("CPEP") in order to determine whether he was competent to resume the practice of medicine. However, prior to expiration of the twenty-day deadline to schedule the assessment imposed by KBML, Brooks was incarcerated. Due to his circumstances, the inquiry panel issued an amended order requiring Brooks to schedule the assessment within twenty days of his release from custody. After his release, Brooks contacted CPEP to inquire about costs but did not schedule the assessment. Brooks submitted information to KBML regarding the cost of the assessment[9] and his current income. He argued that he was unable to afford the cost. In April 2014, after considering Brooks' financial information and arguments, the inquiry panel issued a second amended order which ordered Brooks to schedule the clinical assessment within three months of the resolution of his criminal charges, regardless of how the charges were resolved. Approximately one year later, the criminal charges in both cases against Brooks were dismissed. However, he failed to schedule the skills assessment as ordered and on August 26, 2015, the inquiry

_____

[9] The clinical skills assessment was quoted to cost $9,950.00. The cost would increase, however, if remedial education proved necessary. There are also travel expenses involved as the assessment takes place in Colorado. Brooks repeatedly states that the assessment will cost at least $25,000.00 in total, but he has failed to cite anything in the record in support of this amount, nor have we found any support during our review.

panel issued a default order of indefinite restriction for his failure to complete the clinical skills assessment pursuant to KRS 311.604.

Brooks timely petitioned the Jefferson Circuit Court for judicial review of KBML's order. The case languished as Brooks spent almost two years arguing that he was entitled to additional discovery, including taking the deposition of KBML's legal counsel. Brooks also demanded an evidentiary hearing on the original complaint before a hearing officer. The hearing officer denied the motion for lack of jurisdiction because a final order of indefinite restriction had been entered. The circuit court heard arguments on the merits of Brooks' petition for judicial review in April 2019 and affirmed KBML's order of indefinite restriction by order entered on June 26, 2019. Brooks filed a motion to alter, amend, or vacate the order, which was denied. This appeal followed. Further facts will be developed as necessary.

**Standard of Review**

Generally, "[w]here the legislature has designated an administrative agency to carry out a legislative policy by the exercise of discretionary judgment in a specialized field, the courts do not have the authority to review the agency decisions de novo." *Aubrey v. Office of Attorney General*, 994 S.W.2d 516, 518 (Ky. App. 1998) (citation omitted). However, this appeal involves interpretation of KRS 311.604. Statutory interpretation is a question of law, and this Court reviews

it *de novo.* *Workforce Development Cabinet v. Gaines*, 276 S.W.3d 789, 792 (Ky. 2008).

## Analysis

We begin by addressing the narrow scope of this appeal, which is an issue of first impression for this Court. Despite Brooks' attempts to distract and complicate the issue with unsupported arguments regarding his criminal matters and the charges contained in the original complaint (which became moot once Brooks had not practiced medicine for longer than two years),[10] the only issue before this Court is whether KRS 311.604 requires an administrative hearing prior to KBML issuing an order of indefinite restriction against Brooks' medical license. We conclude it does not.

KRS 311.604 states:

> (1) When a hearing or inquiry panel receives information that a physician has not been engaged in the active practice of medicine for at least two (2) years, the panel may order the physician to successfully complete a board-approved clinical competency examination or a board-approved clinical skills assessment program at the expense of the physician. The panel shall review the results of the examination or assessment and determine whether the physician may resume the

---

[10] Without any basis in fact, Brooks contends that KBML "setup [sic] an Indictment of Dr. Brooks . . . through the connivance of its agents[.]" However, the indefinite restriction against his license was not based on any matter related to his criminal charges, nor was it based on any charges contained in KBML's original complaint. Rather, his license is restricted only because he has not actively practiced medicine in over two years and has failed to schedule the clinical skills assessment as the first necessary step to have his license reinstated.

practice of medicine without undue risk or danger to patients or the public.

(2) Failure of a physician to successfully complete the clinical competency examination or the clinical skills assessment when directed shall constitute an admission that the physician is unable to practice medicine according to accepted and prevailing standards, unless the failure was due to circumstances beyond the control of the physician. The failure shall constitute a default and a final order may be entered without additional testimony or without presentation of additional evidence.

(3) A physician whose license has been suspended, limited, restricted, or revoked under this section or KRS 311.595(8) shall be afforded an opportunity at reasonable intervals to demonstrate that he or she has the competency and skill to resume the practice of medicine.

Brooks first argues to this Court what he perceives as a "procedural conundrum." He points to language in KRS 311.604(1), specifically, "[w]hen a hearing or inquiry panel *receives information* that a physician has not been engaged in the active practice of medicine for at least two (2) years . . . ." (Emphasis added). Brooks contends that "receives information" is a report, and a report is a grievance defined in KRS 311.550(13) as "any allegation in whatever form alleging *misconduct* by a physician[.]" (Emphasis added).[11] Brooks also

_____

[11] Of course, the end result of a grievance, if the subsequent investigation reveals one or more violations of KRS 311.595 and/or 311.597, is issuance of a complaint. If KBML amended its original complaint to include violations of KRS 311.604, as Brooks urges, that would put him on

-13-

argues that KBML is required to amend its initial complaint to include charges of violation of KRS 311.604. We disagree with both assertions.

In support of his arguments, Brooks delves into other provisions of KRS Chapter 311 and administrative regulations[12] that address physician misconduct, but these arguments miss the mark. KRS 311.604 does not deal with physician *misconduct* specifically. There are many reasons that a physician might not practice medicine for at least two years that have nothing to do with misconduct on the part of said physician. Therefore, both the other provisions of KRS Chapter 311 and the administrative procedures pertinent to physician misconduct cited by Brooks are inapplicable. We decline to interpret "receives information" in KRS 311.604(1) as having the same meaning as "grievance" under KRS 311.550(13). The language of KRS 311.604(1) unambiguously allows KBML to order a physician to undergo a skills assessment without the filing of a complaint[13] if KBML receives information that a physician has not been engaged in the active practice of medicine for at least two years.

---

the procedural pathway to the hearing he argues he is entitled to receive. *See* KRS 311.591 and KRS Chapter 13B.

[12] We briefly note that Brooks argues Kentucky Administrative Regulation ("KAR") 201 KAR 9:081 was promulgated under the heading "RELATES TO: KRS 218A.205, 311.530-311.620 AND 311.990[.]" This is incorrect. Although that heading can be found in a secondary source, it is not the heading of the regulation as promulgated.

[13] "Complaint" is defined under KRS 311.550(15) as "a formal administrative pleading that sets forth charges against a physician and commences a formal disciplinary proceeding[.]" "Charge"

Brooks next argues that the plain language of KRS 311.604(2) requires an administrative hearing. Specifically, he points to the language in KRS 311.604(2) that states "a final order may be entered without additional testimony or without presentation of additional evidence." He asserts that the word "additional" requires there must first be a hearing and presentation of testimony and evidence to establish whether his failure to complete the assessment, which eventually constituted a default under KRS 311.604(2), was due to circumstances beyond his control. We disagree.

The record before us refutes Brooks' argument that he was not permitted to present evidence regarding why he failed to complete the assessment. The administrative record includes letters from Brooks' counsel to KBML explaining why he was unable to schedule the assessment (first due to incarceration and then to cost). Further, the order of indefinite restriction states that, in addition to other evidence, KBML considered

> e-mail correspondence from [Brooks'] counsel, dated
> December 13, 2013; [Brooks'] 2011 and 2012 tax return
> information; a statement from [Brooks] to his counsel
> regarding his income sources; a Commonwealth of
> Kentucky, Cabinet for Health and Family Services,
> Statement of Support Due, dated December 8, 2013; and
> e-mail correspondence between [Brooks], his counsel and
> [CPEP], dated February 3, 2014.

---

is defined under KRS 311.550(14) as "a specific allegation alleging a violation of a specified provision of this chapter[.]"

The arguments and evidence presented by Brooks were considered by KBML as demonstrated not only by the order of indefinite restriction, but also by the fact that KBML twice extended the assessment scheduling deadline imposed on Brooks. We hold that the plain language of KRS 311.604(2) does not mandate a hearing in order for a physician to sufficiently demonstrate that he was unable to complete the clinical skills assessment due to circumstances beyond his control. Accordingly, there was no error.

Finally, Brooks argues that the circuit court's order affirming KBML "is both clearly erroneous and portrays a [basic] misunderstanding of the circumstances attendant to Brooks' situation." This is simply a repackaging of his argument that he is entitled to a hearing to confront the allegations contained in the original complaint[14] –even though those allegations became moot after he had not practiced medicine in two years– and to demonstrate that his failure to schedule the assessment as ordered was due to circumstances beyond his control. Brooks points to two passages in the circuit court's order:

> Again, in terms of public protection, it is not
> unreasonable that physicians be able to continue to
> establish competency in their [field] before being allowed
> to practice. While Brooks may find this unfair, KRS

---

[14] Brooks again asserts, without any factual basis in the record, that KBML's "agents were deeply involved in causing the Indictments to be filed against Dr. Brooks [in] Jessamine and Montgomery Counties. Further, the depositions would have shown a lack of merit to the overall complaints made by [K.S.'s mother] and the lack of any merit at all to the allegations supplied to [KBML] by its investigator, Douglas Wilson."

311.604 provides that a physician may have their license revoked for failure to qualify as competent to practice medicine.

. . .

While the KBML could grant a hearing on the issue of this specific evaluation, no information could be presented that would change the basic fact that Brooks had gone more than two years without practicing medicine.

The circuit court agreed with KBML that Brooks' financial situation did not amount to "circumstances beyond his control." For his part, Brooks argues that he was unable to pay for the examination due to what he characterizes as improper conduct by KBML and what he perceives as their role in the criminal charges against him. We agree with the circuit court and KBML.

At the time KBML issued its order of indefinite restriction, Brooks had not practiced medicine in almost four years. The administrative delays came at the request of Brooks because he did not wish to proceed with the administrative hearing while his criminal actions were pending. KBML and the hearing officer accommodated *his requests* for delays on the initial complaint. After more than two years had passed, KBML again accommodated Brooks by repeatedly extending the deadline for scheduling of his clinical skills assessment. He cannot successfully argue around the fact that, no matter the results of any hearing he asserts he is entitled to under KRS 311.604, he would be in the same position as he

-17-

is now. Stated differently, even if Brooks could demonstrate that, *at the time*, the reason he could not successfully complete the assessment was due to circumstances beyond his control, it has now been over nine years since he has practiced medicine. We decline to interpret KRS 311.604 in such a manner that would require KBML to reinstate the license of a physician who has not practiced medicine for more than nine years without requiring a clinical skills assessment. We agree with KBML that its "primary goal, and its obligation to the public, is to establish that [physicians in the Commonwealth are] competent to practice medicine without undue risk to patients."[15] Even though his license has been suspended under the statute, Brooks "shall be afforded an opportunity at reasonable intervals to demonstrate that he [] has the competency and skill to resume the practice of medicine." KRS 311.604(3).[16] As KBML argues, "the ball is in Brooks' court" at this point. We agree. KRS 311.604 in its present form was in effect at the beginning of Brooks' legal issues and at all times throughout all litigation involving Brooks. He knew, should have known, or should have been

---

[15] KBML cites to *Morgan v. Kentucky Board of Medical Licensure*, No. 2004-CA-001609-MR, 2005 WL 1792198, at *4 (Ky. App. Jul. 29, 2005). Although unpublished, we agree with that decision's reasoning regarding the goal of KBML. *See* KRS 311.565 for specific powers and functions of KBML.

[16] The order of indefinite restriction quotes KRS 311.604(3), but additionally states that "[t]he Panel shall not consider any request by the licensee to resume the active practice of medicine unless he has successfully completed a clinical skills assessment by [CPEP.]"

counseled by his attorney what he risked in failing to comply with it. The ability to pay for the assessment is, and always has been, within his control.

## Conclusion

Although the language in KRS 311.604 does not prevent KBML from affording a hearing to a physician regarding why he or she has not practiced medicine in at least two years, a hearing is not required under the statute as argued by Brooks. KRS 311.604 is unrelated to physician misconduct, which is governed by other sections of KRS Chapter 311. Accordingly, we AFFIRM the Jefferson Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

J. Fox Demoisey
Louisville, Kentucky

BRIEF FOR APPELLEE:

Leanne K. Diakov
Louisville, Kentucky