RENDERED:  NOVEMBER 6, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0382-ME


SCOTT M. BRUGGEWORTH                                        APPELLANT



|       | APPEAL FROM ANDERSON FAMILY COURT |
|-------|-----------------------------------|
| v.    | HONORABLE S. MARIE HELLARD, JUDGE |
|       | ACTION NO. 20-D-00009-001         |



ANNIKA MARIAN BRUGGEWORTH                                   APPELLEE



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, MCNEILL, AND L. THOMPSON, JUDGES.

GOODWINE, JUDGE:  Scott Bruggeworth ("Scott") appeals from a domestic

violence order ("DVO") entered against him by the Anderson Family Court.  After

careful review of the DVO statutes, finding no error, we affirm.

On February 2, 2020, Annika Bruggeworth ("Annika") petitioned the

Anderson Family Court for a DVO against her husband, Scott.  Annika alleged

Scott had become increasingly violent in recent years and had recently pushed her down the stairs, hit her in the face multiple times, and prevented her from leaving the house for her breast cancer treatment appointments. On the day Annika filed the petition, she alleged Scott "kicked in the door and pushed my door into my face." Record ("R.") at 12. Based on Annika's petition, the family court entered an emergency protective order ("EPO") on her behalf and scheduled a hearing on the petition.

During the hearing, the family court read the allegations in Annika's petition into the record and heard testimony from both parties. At the end of the hearing, the family court found Annika established by a preponderance of the evidence that an act of domestic violence and abuse had occurred and may occur again. The family court made additional written findings regarding threatening text messages sent by Scott to Annika and found Scott had physically pushed Annika down the stairs. Based on these findings, the family court issued a three-year DVO for Annika. Scott appealed.

On appeal, Scott argues: (1) the family court's factual findings were clearly erroneous; (2) the family court violated the KRE[1] 106 rule of completeness; and (3) Annika manipulated the family court. Under Kentucky law, a court may

---

[1] Kentucky Rules of Evidence.

enter a DVO if it "finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]"  KRS[2] 403.740(1).

> The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence. . . .  The standard of review for factual determinations is whether the family court's finding of domestic violence was clearly erroneous. Findings are not clearly erroneous if they are supported by substantial evidence.

*Caudill v. Caudill*, 318 S.W.3d 112, 114-15 (Ky. App. 2010) (citations omitted).

Before reaching the merits of Scott's arguments, we must address a significant deficiency in his brief.  "There are rules and guidelines for filing appellate briefs. . . .  Appellants must follow these rules and guidelines, or risk their brief being stricken, and appeal dismissed, by the appellate court."  *Koester v. Koester*, 569 S.W.3d 412, 413 (Ky. App. 2019) (citing CR[3] 76.12).  Scott's brief includes a preservation statement that makes no "reference to the record showing whether the issue was properly preserved for review and, if so, in what manner" as required by CR 76.12(4)(c)(v).  An appellant's compliance with this rule allows us to undergo "meaningful and efficient review by directing the reviewing court to the most important aspects of the appeal[,] [such as] what facts are important and

---

[2] Kentucky Revised Statutes.

[3] Kentucky Rules of Civil Procedure.

where they can be found in the record[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010).

Scott asserts the "record was properly preserved for appeal by filing" his notice of appeal. Appellant's Brief at 10. His brief does not state how he preserved any of his arguments in the family court either in a written document or orally, contravening CR 76.12(4)(c)(v), which states:

> An "ARGUMENT" conforming to the statement of Points and Authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

The language of this rule "emphasizes the importance of the firmly established rule that the trial court should first be given the opportunity to rule on questions before they are available for appellate review. It is only to avert a manifest injustice that this court will entertain an argument not presented to the trial court." *Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky. App. 1990) (quoting *Massie v. Persson*, 729 S.W.2d 448, 452 (Ky. App. 1987), *overruled on other grounds by Conner v. George W. Whitesides Co.*, 834 S.W.2d 652, 654 (Ky. 1992)). We require a statement of preservation:

> so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration. It also has a bearing on whether we employ the recognized standard

of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted.

*Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

Failing to comply with the civil rules is an unnecessary risk the appellate advocate should not chance. Compliance with CR 76.12 is mandatory. *See Hallis*, 328 S.W.3d at 696.

It is a dangerous precedent to permit appellate advocates to ignore procedural rules. Procedural rules "do not exist for the mere sake of form and style. They are lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination. Their importance simply cannot be disdained or denigrated."

*Id.* (quoting *Louisville and Jefferson County Metropolitan Sewer Dist. v. Bischoff*, 248 S.W.3d 533, 536 (Ky. 2007)).

"Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only[.]" *Id.* (citation omitted).

Scott requested palpable error review for any unpreserved arguments. We have reviewed the entire record and watched the entire hearing. We note that the record on appeal is 56 pages, and the hearing was less than one hour. Video Record ("V.R.") at 11:10:07-11:46:25. Based on our review, Scott contested Annika's version of events, so we will consider his arguments regarding the family

court's factual findings preserved. Because "the impact of having an EPO or DVO entered improperly, hastily, or without a valid basis can have a devastating effect on the alleged perpetrator[,]" we choose to ignore the deficiency and proceed with our review of these arguments. *Petrie v. Brackett*, 590 S.W.3d 830, 835 (Ky. App. 2019) (quoting *Wright v. Wright*, 181 S.W.3d 49, 52 (Ky. App. 2005)). However, Scott failed to preserve the remainder of his arguments, so we will review them for palpable error.

Domestic violence is governed by KRS 403.715 *et seq.*, which provides that domestic violence petitions must contain "[t]he facts and circumstances which constitute the basis for the petition" alleging domestic violence and abuse. KRS 403.725(3)(c). "Domestic violence and abuse" is defined as:

> physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members[.]

KRS 403.720(1). "'Physical injury' means substantial physical pain or any impairment of physical condition[.]" KRS 500.080(13). It can also mean "[p]hysical damage to a person's body." *Physical Injury*, BLACK'S LAW DICTIONARY (11th ed. 2019).

When entering a DVO, the family court determines a petitioner has shown by a preponderance of the evidence an act or acts of domestic violence has occurred and may again occur. KRS 403.750(1); *Matehuala v. Torres*, 547 S.W.3d 142, 144 (Ky. App. 2018); *see also Bissell v. Baumgardner*, 236 S.W.3d 24, 29 (Ky. App. 2007). To enter a DVO, the family court must decide a petitioner is more likely than not to have been a victim of domestic violence. *Matehuala*, 547 S.W.3d at 144; *Wright*, 181 S.W.3d at 52.

"A DVO 'cannot be granted solely on the basis of the contents of the petition.'" *Clark v. Parrett*, 559 S.W.3d 872, 875 (Ky. App. 2018) (citation omitted). At the hearing, the family court read the factual allegations from Annika's petition into the record and heard testimony from both parties. Annika testified that, three weeks prior to the hearing, Scott pushed her down a flight of stairs, but she caught herself at the bottom. Annika further stated that she feels threatened on occasions when Scott has not physically harmed her. She explained that he would "air punch" at her face and come within an inch of hitting her. V.R. at 11:19:15. Annika said she knew not to move during Scott's air punches because he hit her in the face and broke the skin a few years ago.

Annika then testified regarding the specific events of February 2, 2020, that led to her filing the petition. She stated:

> I went out of town on business. I found out through
> Locations that he went back to the strip club, lying to me

that he was at the gym.  So I came home and prepared
myself and locked the door.  I put his things out, so he
wouldn't say he didn't have his things.

. . .

So I prepared for them to be out, because I have to
divorce now because he's never going to stop.  So he
came to get his stuff and the suitcase was between us and
he slammed the door in my face.  I got it out – he left.
He then started texting me he was going to "break in,"
"I'm coming in, "I don't care about the police."

V.R. at 11:20:14-11:21:06.  Annika testified she then called the police to make a

statement, and during the call, Scott reappeared at the home and started bashing

and kicking the door.  The police arrived shortly thereafter, and Scott "raced off"

and told Annika "she would be sorry."  V.R. at 11:21:36-11:21:44.

Annika also presented text messages as evidence of Scott's threats to

her.  In pertinent part, Scott told Annika:  "That last romp with your boyfriend will

make your life hell!!!" and "This will end badly."  R. at 26 and 43.  Scott also told

Annika that he was going to break into the home multiple times.

Scott testified there was no history of abusing his wife and denied all

allegations.  He stated he did not "know what she was referencing" when she

discussed him pushing her down the stairs.  V.R. at 11:28:17.  Scott further

testified that he believed Annika was financially motivated to file the petition.

Based on Annika's testimony, the family court entered the order of

protection, using the AOC-275.3 form order.  The family court checked the box

finding "[f]or the Petitioner against the Respondent in that it was established by a preponderance of the evidence, that an act(s) of domestic violence and abuse . . . has occurred and may occurred again." R. at 41. Additionally, the family court made the following written findings of fact: "Respondent has made threats such as 'this will end badly,' and '[t]hat last romp with your boyfriend will make your life hell.' Respondent has been physically violent with the petitioner in the past (*i.e.*, pushing Petitioner down the steps.)" R. at 43.

The family court followed the statutory requirements for issuing a DVO. The court made specific findings that Annika was a victim of domestic violence, domestic violence had occurred in the past, and it was likely to occur in the future. The family court entered additional written findings stating a basis for entering the DVO against Scott. As such, we conclude Annika's testimony and text messages presented formed a sufficient factual basis under KRS 403.740(1) for the family court to issue the DVO.

Next, we address Scott's argument that the family court erred finding Annika's testimony more credible than Scott's. It is well-established that "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (internal quotation marks and citations omitted). As

long as the family court's findings "are supported by substantial evidence," we will not disturb them. *Id.* Substantial evidence is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." *Id.* (internal quotation marks and citations omitted).

Here, the family court accepted Annika's testimony regarding the alleged instances of domestic violence over Scott's general denial of the allegations. It was in the family court's discretion to believe Annika's testimony and text messages to the exclusion of Scott's testimony. Annika's testimony constituted substantial evidence to support the family court's factual findings. As such, the family court's factual findings were not clearly erroneous, and the court did not abuse its discretion in issuing the DVO against Scott.

Third, Scott argues the family court violated KRE 106 in allowing Annika to introduce the text messages. He asserts Annika presented printed copies of incomplete text messages. It appears from the exhibits presented at the hearing that two of Annika's and two of Scott's longer messages were cut off in the middle, and there is an option to "view all." R. at 26, 34, 38, and 39. He argues the messages were likely taken out of context because the family court did not have copies of the full exchange. Scott attempted to show the family court

messages on his phone. The family court asked if he brought printed copies of the messages. Scott replied he did not and dropped the issue. He did not object to the text messages presented by Annika during the hearing. Scott concedes he did not preserve this issue and requests palpable error review.

KRE 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party *may* require the introduction *at that time* of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." (Emphasis added). Annika argues the rule was not violated because Scott had the option to require Annika to introduce the complete messages or full exchange at the time the messages were introduced, and he failed to do so. We agree.

Furthermore, the family court did not palpably err in admitting the text messages. We may only reverse for palpable error when "there is a 'substantial possibility' that the result in the case would have been different without the error." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (quoting *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836 (Ky. 2003)). Here, the introduction of the text messages did not alter the outcome of the case. Annika testified regarding the threatening text messages from Scott and the incident when he pushed her down the stairs. Because the family court would not

-11-

have merely relied on the petition in the absence of the text messages, there was no palpable error.

Finally, Scott argues Annika manipulated the family court in requesting a DVO. Scott asserts Annika used this proceeding to "one-up" him. Appellant's Brief at 25. Scott's argument cites to Annika's financial concerns stemming from his behavior, but he omits her concerns for her safety. We find Scott's argument without merit. Although Scott "is obviously dissatisfied with the trial court's decision, threadbare recitals of the elements of a legal theory, supported by mere conclusory statements, form an insufficient basis upon which this Court can grant relief." *Jones v. Livesay*, 551 S.W.3d 47, 52 (Ky. App. 2018). Apart from reciting applicable law cautioning against hastily entering a DVO or issuing one without legal merit, Scott advances nothing of substance in support of his contention. We will not scour the record to construct Scott's argument for him, and we are confident nothing in the record supports this argument. Based on our thorough review of the trial record, Annika presented a legitimate basis for the family court to issue a DVO against Scott.

For the foregoing reasons, we affirm the domestic violence order entered by the Anderson Family Court.

ALL CONCUR.

BRIEF FOR APPELLANT:        BRIEF FOR APPELLEE:

Raven N. Turner             Ryan Robey
Frankfort, Kentucky        Lexington, Kentucky