The UNION LIGHT, HEAT & POWER COMPANY, a Kentucky Corporation, Appellant,

v.

William BLACKWELL'S ADM'R (James B. Milliken et al.), Appellees.

Court of Appeals of Kentucky.

Jan. 27, 1956.

As Modified on Denial of Rehearing June 22, 1956.

Stephens L. Blakely, Marion W. Moore, Covington, for appellant.

McGarry & Rich, Sawyer A. Smith, Covington, Louis Levy, Cincinnati, Ohio, for appellees.

STANLEY, Commissioner.

William Blackwell, employed by a construction company building a flood wall in Newport, was electrocuted by a high tension wire of the appellant, The Union Light, Heat & Power Company. We reversed a judgment rendered on a verdict for the defendant in an action for his death in Blackwell's Adm'r v. Union Light, Heat & Power Co., Ky., 265 S.W.2d 462. On a second trial the verdict was for the plaintiff for $50,000. The appeal is from the judgment thereon.

The facts are fully related in the first opinion. In brief, they are that the high tension wires ran over a street and place where construction work was to be done. It appeared that the presence of the wires would interfere with the construction work, and at the contractor's instance the Union Company relocated the wires and ran them above a vacant lot on the other side of the street. The contractor expected to use the lot for the storage of material and equipment. The wires, of 13,500 voltage, were run 36 feet above the ground.

The deceased, Blackwell, was in the act of attaching a cable suspended from the end of a 55 foot crane boom to a metal bucket, which seems to have been directly beneath the wires, when he was electrocuted. Some lumber on the ground was to be moved into the street by the crane. The crane operator, who was the only eyewitness, testified on both trials that the deceased had looked up at the wires as he went about this job and had attempted to keep a safe distance from them and did not bring the cable closer than six or eight feet to the wires, but, nevertheless, was electrocuted, the inference from his testimony being the electricity had "jumped" from the wires to the cable to which the bucket was attached.

As stated in the first opinion, "the most difficult question" was whether or not the defendant was guilty of negligence per se in failing to observe the provisions of a city ordinance which required insulation of all electric wires. Our attention was devoted primarily to that point. We stated that there was sufficient evidence to take the question of the defendant's negligence to the jury because of the conflict of opinion testimony concerning the safety and practicability of insulating the wires and the fact they were maintained in close proximity to the lot where deceased and other employees of the construction company were required to work. We find substantially the same conflict in expert opinions in the present record.

In the course of the opinion reference was made to the testimony of the construction company's engineer that he had informed Union's engineer that the vacant lot would not be used in connection with the work. This, however, was regarded as not important because, as a matter of fact, the lot had been used for storage purposes for several weeks before the accident and Union's agent either knew or should have known that fact. The instruction which we prepared for another trial of the case stated the defendant's duty with respect to insulating or protecting the wires "so as to make them free from danger to those who might be brought in contact with same while performing such work as could reasonably have been anticipated by the defendant."

The character of the use of the vacant lot and the knowledge thereof by the defendant have become of controlling importance.

It is well proven that defendant's agents were told the reason the construction company wanted the wires relocated was that they would interfere with the work to be done on the street and on a lot over which the wires ran and that a crane with a boom would be used there. Kircher, the defendant's engineer, testified that Allen, the contractor's manager, had told him that would be the only place he would use the equipment, and that he never had any knowledge of the use of the crane or other

machinery on the so-called vacant lot. He was at the place only once thereafter and that was about the time the work was begun. Three months elapsed before the accident occurred. Allen testified that this vacant lot had been used for the storage of small tools such as pumps, wheelbarrows and the like, some of which were placed under the wires. Wright, the crane operator, testified that lumber had been stored there from the beginning of the job, and he had moved things off the lot with the crane "three or four weeks or a month" previously. This is the strongest evidence in behalf of the plaintiff to show the use of the crane on the lot. But Wright's testimony on this point is by no means definite as to the particular lot he referred to, and Allen's testimony indicates he must have had reference to the work on the project at other places and not on this particular lot.

■ Foresight or reasonable anticipation is the standard of diligence, and precaution a duty where there is reason for apprehension of danger. Even where such a dangerous instrumentality as a highly charged electric wire is involved, with the consequent imposition of the highest degree of responsibility, liability for harm is grounded upon negligence and not insurance. All the evidence in this case shows there was no reason for the power company to apprehend that a crane with a long boom would be used on the vacant or storage lot above which it had placed its wires nor, as we have said, was there any evidence that the company knew it was there before the accident. Knowledge of the use for the storage of lumber was knowledge of a use which did not create danger from the electric wires. There was no duty to keep this lot under inspection. We do not regard evidence in this case as showing notice, actual or constructive, of any dangerous use of the lot.

It seems to us the case is controlled by Kentucky & West Virginia Power Co. v. Adams, Ky., 267 S.W.2d 717, where a crane with a long boom made contact with or came close to a high tension wire and current ran through the boom to the ground and injured a workman. We held as a matter of law that the power company was not negligent. It had knowledge of the use of such equipment as the crane around the coal tipples, but there was no evidence or notice that such equipment would be used in proximity to the power line. A like case in principle and application is Morton's Adm'r v. Kentucky-Tennessee Light & Power Co., 282 Ky. 174, 138 S.W.2d 345.

We stated in the first opinion that notice had been given the defendant that the vacant lot was to be used "for storage" of material and equipment; and since the lot "was actually used for storage purposes for several weeks before the accident", the defendant's agents "either knew or should have known of that fact." [265 S.W.2d 464.] Nothing was said in the former opinion or, indeed, was there anything in the record to show the defendant's knowledge or notice that a crane with a long boom would be or was expected to be or had been used on the vacant lot. On the contrary, all the evidence was and is to the effect that the very purpose of relocating the wires over this lot was to avoid danger from such use.

As stated, on the former appeal the mind of this court was centered upon the novel and controversial question as to the effect of a city ordinance which required insulation of all electric wires without distinction between those of low tension and those of extremely high power. Not much attention was given to the question of notice of the use of the crane on the storage lot where the accident occurred. The instruction prepared for the second trial included as a condition to the right of the plaintiff to recover damages that the decedent "was performing such work [at the time and place] as could reasonably have been anticipated by the defendant." By a critical comparison of the two records we find the evidence of constructive notice of the use of the crane on the lot, above which the defendant had strung its wires, to be substantially the same. But it does not show any negligence on the part of the defendant.

The appellee strongly relies on the law of the case rule and insists that this court settled the question of sufficiency of the evidence to go to the jury upon the second trial.

■ It is an iron rule, universally recognized, that an opinion or decision of an appellate court in the same cause is the law of the case for a subsequent trial or appeal however erroneous the opinion or decision may have been. Perhaps no court has been as consistent as this court in strictly adhering to the doctrine. We have made no express exception where it appeared the issues and facts were substantially the same on subsequent trials and appeals. We have an unbroken line of innumerable cases. However, some of our opinions in which the rule was not applied reflect the straining of the court to find the evidence was different.

The law of the case rule is a salutory rule, grounded on convenience, experience and reason. It has been often said that it would be intolerable if matters once litigated and determined finally could be relitigated between the same parties, for otherwise litigation would be interminable and a judgment supposed to finally settle the rights of the parties would be only a starting point for new litigation. Thompson v. Louisville Banking Co., Ky., 55 S.W. 1080, 21 Ky.Law Rep. 1611.

Notwithstanding the firmness of this rule in general, a number of courts have maintained and held that the rule is not inflexible but is subject to exception, although the exception must be rare and the former decision must appear to be clearly and palpably erroneous. In such a case it is deemed to be the duty of the court to admit its error rather than to sanction an unjust result and "deny to litigants or ourselves the right and duty of correcting an error merely because of what we may be later convinced was merely our ipse dixit in a prior ruling in the same case." McGovern v. Kraus, 200 Wis. 64, 227 N.W. 300, 305, 67 A.L.R. 1381. That opinion thoroughly considers the qualification of the rule where the error in a former decision was great. The court notes the analogy of sustaining petitions for rehearing which substantially change the position and views of the court from those originally taken. Upon sensible and cogent reasons for making an exception in an extraordinary case, the court modified the practice formerly established in Wisconsin and, as indicated above, reserved unto itself a right and recognized the duty to correct a prior ruling made by it in the same case whenever the error was great and substantial and proper reasons exist for doing so.

The Missouri Supreme Court, in Mangold v. Bacon, 237 Mo. 496, 141 S.W. 650, 654, after defining the doctrine and rule of the law of the case and stating persuasive reasons for it added:

"But there are exceptions to the rule as well recognized as the rule itself. Those exceptions evidence a flexibility adjusting the rule to needs of refined justice by the exercise of a high and discriminating judicial power. * * * Whether from grace or right when cogent and convincing reasons appear, such as lack of harmony with other decisions and where no injustice or hardship would flow from a change, or where by inadvertence principles of law have been incorrectly declared the first time, or mistake of fact has been made, or injustice to the rights of parties would be done by adhering to the first opinion, then the exceptions to the rule have play, and it is our duty to re-examine and correct our own errors on the second appeal in the same case."

In a later case, Murphy v. Barron, 286 Mo. 390, 228 S.W. 492, that court summarized the four conditions to recognizing an exception to the rule as thus declared. There are many such Missouri cases.

Another well-considered opinion is Johnson v. Cadillac Motor Car Co., 261 F. 878, 8 A.L.R. 1023. The United States Circuit Court of Appeals, Second Circuit, had held on a first appeal that there was no liability on the part of a manufacturer for an injury to the owner of an automobile, caused by

the collapsing of a wheel of the car, because there was no contractual relation between the parties. A second trial was held consistent with that opinion. On an appeal from a judgment for the defendant in that trial, the appellate court reconsidered its former decision, reviewed the federal and state authorities, found the law of the case rule not to be inexorable and held that the court would not follow an erroneous ruling on the first appeal which had resulted in injustice and at the same time laid down a principle of law for future guidance which was unsound and contrary to the interests of society.

A number of other courts have reached the same conclusion in recognizing that the administration of justice requires some flexibility in the rule and that an appellate court not only has power to reconsider a former decision but should depart from it in unusual circumstances. A long list of cases are cited in support of the text to that effect in 5 C.J.S., Appeal and Error, §§ 1824, 1825. Many conditions held to have justified qualification and departure from the strict application of the rule are catalogued in Annotations, 1 A.L.R. 1270 and 67 A.L.R. 1390. In Alabama a statute requires the appellate court to consider anew any question previously decided without regard for its former opinion. See Wilkey v. State ex rel. Smith, 244 Ala. 568, 14 So.2d 536, 151 A.L.R. 765. All of these cases reflect an accelerating trend to make an exception to the general rule where it clearly appears that the result of the error to be cured far outweighs any harm that may be done in the particular case, especially where no rights have accrued or become vested and no substantial change has been made in the status of the parties by reason of the former decision.

The court should look to the effect of its own error rather than merely acknowledge that error was committed and let it go at that. It should wipe out the effect of the mistake in the first opinion rather than perpetuate the error which would otherwise result in great wrong to the litigant and establish a bad precedent. That is essential justice.

The appellee submits that as strictly an appellate court, this court has no power to review its own final decision where the mandate has issued and the term ended. Now and then expressions to this effect may be found in our opinions in applying the law of the case rule or where the conditions did not involve consideration in a subsequent appeal of a grave error in the case. The argument is essentially the argument of res judicata. The law of the case doctrine is similar and analogous to but is not identical with the doctrine of res judicata. 5 C.J.S., Appeal and Error, § 1822. There is, however, minority authority for the res judicata concept. Note 1 A.L.R. 1270 cites cases to that effect from California, Montana and South Carolina. But these cases seem to have been gathering moss through the year. Later cases of the great majority of the courts which had so held are to the contrary. An example is McGovern v. Kraus, 200 Wis. 64, 227 N.W. 300, 67 A.L.R. 1381, cited above, which, as stated, abandoned the concept of res judicata.

With reference to the use of the strong term, "res judicata," in connection with the general rule, the late well-known Judge Lamm, writing for the court in Mangold v. Bacon, supra, 237 Mo. 496, 141 S.W. 650, 655, said: "Possibly that use of the term is a little due to poverty of our language in expressing nice shades of thought, or by way of analogy. However that be, the exceptions to the rule show the term, 'res judicata,' in all its strictness, is an inappropriate or loose expression in that connection. It would be better to say 'in the nature of res judicata.' "

In Southern Ry. Co. v. Clift, 260 U.S. 316, 43 S.Ct. 126, 67 L.Ed. 283, 284, the court reviewed a judgment rendered on a second appeal by the Indiana Supreme Court in which that court had held its decision on the first appeal to be the law of the case. In response to the argument of res judicata, the Supreme Court of the United States said: "The prior ruling may have been followed as the law of the case, but there is a difference between such adherence and res judicata. One directs dis-

cretion; the other supersedes it and compels judgment. In other words, in one it is a question of power, in the other of submission."

Where a case is presently before an appellate court after a second trial, its review and disposition is with respect to error committed on that trial—not on the first trial, which was before the court on the first appeal. It is not in point to say, in effect, that we are reviewing or modifying a judgment in a case in which the mandate has issued and over which we have lost jurisdiction. The court is not assuming to reopen a final adjudication of a case. Although this is the same action, the first judgment was not affirmed and the litigation was not ended. The reversal was for error relating to the duty of the defendant to insulate its wires at the point of the accident and the instruction on that issue. The case was tried de novo. The trial court properly followed the first opinion and was led into error by the quite inadvertent error of this court in holding there was sufficient evidence of negligence in having its wires where they were to submit the case to the jury. In deciding the present appeal, we reach the conclusion that the judgment should be reversed since no negligence of the defendant was proven because there was no duty to anticipate the use of the crane beneath the relocated wires. The immediate question in the case now at bar is the consideration and effect to be given the former opinion and decision. All courts of last resort occasionally exercise the natural right to change their minds and find it proper and just to overrule and thus correct their former declarations of legal principles, notwithstanding the rule of stare decisis. That, it may be observed, is a rule similar to the law of the case rule but less forceful and subject to looser adherence. See Daniel's Adm'r v. Hoofnel, 287 Ky. 834, 155 S.W.2d 469, for comment on the flexibility of the rule of stare decisis according to the demands of a case.

■ We think the present case meets the test of qualification of the law of the case

rule. We conclude that the evidence in the record now before us did not authorize a submission to the jury of any question of negligence on the part of the defendant. We are constrained to admit our own error in holding it was sufficient on the first trial and that as an exception to the law of the case rule, to overrule the former opinion to the extent that it so holds.

Upon another trial, if there be no more evidence to establish actual or constructive notice and knowledge of the defendant company as to the use of the crane at the time and place where the accident occurred than was introduced on this trial, the court should direct a verdict for the defendant.

Judgment reversed.

MILLIKEN, C. J., not sitting.