829 F.2d 1126
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gobel MATTINGLY, Plaintiff-Appellant,
v.
CITIZENS FIDELITY BANK AND TRUST CO., INC., Defendant-Appellee.
 No. 86-5192
 United States Court of Appeals, Sixth Circuit.
 September 24, 1987.
 
 Before NATHANIEL R. JONES, WELFORD and RALPH B. GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 On December 30, 1982, plaintiff, Gobel Mattingly, instituted a diversity action against defendant, Citizens Fidelity Bank and Trust Company, Inc. (Citizens), in the United States District Court for the Western District of Kentucky. The suit grew out of a loan transaction between the parties. In his complaint, Mattingly alleged abuse of process, breach of contract, breach of a fiduciary relationship, and a due process deprivation in violation of 42 U.S.C. Sec. 1983.[1] Prior to the institution of the federal action, the parties had been involved in related ongoing state court proceedings. As a result, this federal suit was put on hold pending appellate resolution of the related state claims. Both parties agreed that this was appropriate.
 
 
 2
 The state claims were ultimately resolved in favor of Citizens which then brought a motion to dismiss this suit on res judicata grounds. The district court granted this motion, finding the requisite identity of issues and parties making it appropriate to apply the bar of res judicata.
 
 
 3
 On appeal, plaintiff claims that the district court erred in applying the doctrine of res judicata or collateral estoppel because the Kentucky Court of Appeals did not reach the merits of the issues presented to the federal court. Upon review we conclude that Judge Ballantine appropriately dismissed the case below on the judicata grounds, and affirm.
 
 I.
 
 4
 In 1974, to secure a loan with Citizens, Mattingly pledged stock certificates of Allied Ready-Mix Company and American Equipment Company. This loan was to be repaid in 1981.
 
 
 5
 In 1977, Mattingly obtained a second loan from Citizens in the amount of $350,000. This was a loan guaranteed by the Small Business Administration (SBA) and was for Compressed Gas Corporation, a corporation that Mattingly owned. As a prerequisite to securing the SBA guaranty, Mattingly had to individually guarantee the loan being made to Compressed Gas Corporation as well as executing the standard SBA loan guaranty forms. As collateral for the guaranty, Mattingly gave a junior mortgage on real estate subject to a prior mortgage to Mammoth Cave P.C.A. and Alexander Hamilton Life Insurance Company.
 
 
 6
 Citizens also required a security agreement and financing statement from Compressed Gas and consequently, Mattingly executed an agreement for Compressed Gas granting a security interest to Citizens in all machinery, equipment, furniture, and fixtures. The principal asset of value covered by the agreement was an Allied Eastern gas compressor unit and glycol dehydrator which was being purchased with the loan proceeds. Only one payment was ever made on this loan since less than 90 days after the proceeds were received an unfortunate accident put Compressed Gas out of business.
 
 
 7
 Mattingly's misfortunes continued and in the fall of 1978 Mammoth Cave P.C.A. instituted a foreclosure action against him seeking a forced sale of the real estate which had been the collateral for the SBA guaranty and on which Mammoth held the first mortgage. Since Citizens held the junior mortgage on this same property, it was also named as a defendant. When Citizens answered it also filed a cross-claim against Mattingly as the guarantor on the now-defaulted Compressed Gas loan. On December 19, 1978, Citizens secured a judgment on its cross-claim in the amount of $291,355.05 which was reduced by a $20,000 credit. The judgment was not further reduced by the foreclosure sale, however, since all the proceeds of that sale went to Mammoth.
 
 
 8
 Citizens also took possession of the gas compression unit and dehydrator which was pledged by Compressed Gas as security.[2] The judgment against guarantor Mattingly remained unsatisfied, however, because the collateral was not liquidated and the real estate collateral proceeds went elsewhere. During this period of time Citizens and Mattingly were engaged in settlement negotiations which continued until December 1981, but no agreement was reached.
 
 
 9
 Notwithstanding his financial problems, Mattingly was apparently in a position to pay off his 1974 loan which was due in March of 1981. The discharge of this loan would have resulted in the return to Mattingly of the valuable stock he pledged to secure this loan. In an apparent attempt to keep this from occurring, Citizens, in February 1981, caused an order of garnishment and a writ of execution predicated on its 1978 judgment against Mattingly to issue against the stock shares in its possession.[3] In October of 1981 Citizens also caused a second order of garnishment to issue for the dividends due on the stock already attached.
 
 
 10
 Mattingly, in January 1982, moved to quash both garnishments in the Grayson Circuit Court. No decision was rendered on these motions until May 1983 when the Grayson Circuit Court upheld the February 1981 garnishment but set aside the October 1981 garnishment of the stock dividends. Mattingly appealed and Citizens cross-appealed.
 
 
 11
 While the Grayson Circuit Court proceedings were pending, Mattingly instituted this suit in federal court in which little or no action occurred pending the resolution by the state appeals court of the garnishment dispute.
 
 
 12
 On May 22, 1984, the Kentucky Court of Appeals issued its decision which ruled against Mattingly on his appeal but in favor of Citizens on its appeal. Thus, the validity of both garnishments were upheld. The Supreme Court of Kentucky denied discretionary review on February 21, 1985.
 
 
 13
 Undaunted, Mattingly now returned to the federal court where, although short on luck but apparently long on optimism, he filed a motion for summary judgment. Citizens' response was to file its own cross-motion for summary judgment on res judicata and collateral estoppel grounds which was granted by the district court.
 
 II.
 
 14
 A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . ..' Southern Pacific R. Co. v. United States, 168 U.S. 1, 48-49, [18 S. Ct. 18, 27, 42 L.Ed. 355] (1897). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions.
 
 
 15
 Montana v. United States, 440 U.S. 147, 153 (1979) (citations omitted).
 
 
 16
 Montana sets forth the black letter law of res judicata which the parties do not really dispute. Similarly, there is no dispute that a federal court must give the same preclusive effect to a state court judgment as that judgment would be given under state law. George v. United Kentucky Bank, Inc., 753 F.2d 50, 52 (6th Cir.) cert. denied, 471 U.S. 1018 (1985).[4] What is disputed is just what the state court decided and whether the decision encompasses the issues in Mattingly's federal case. Since the federal case was a suit for damages and the state suit was to quash a garnishment it is obvious that this issue cannot be resolved by a simple comparison of the pleadings. Rather, it is necessary to look to the essence of each case and beyond the pleading verbiage.
 
 
 17
 In Mattingly's federal case he essentially alleged that Citizens breached its contract and its fiduciary duty by encumbering, through garnishment and attachment, stock certificates which were pledged in an unrelated loan and which upon payment of such loan should have been returned to him unencumbered. In the garnishment action Mattingly argued that Citizens 'unlawfully encumbered [his] property which had been pledged in a separate debt and that the Bank's failure to have disposed of the collateral . . . in a commercially reasonable manner extinguished the debt.' (Court of Appeals opinion, app. 66).
 
 
 18
 It is thus clear that Mattingly's argument that Citizens had illegally encumbered his stock which was pledged for another debt is a thread common to both suits and one which clearly would be subject to the bar of res judicata if decided by the Kentucky Court of Appeals. It is equally clear that the Kentucky Court of Appeals decided this issue.[5]
 
 
 19
 The Kentucky court did not decide, however, the 'disposition in a commercially reasonable manner' issue. The court concluded that this issue was not properly before them since 'Compressed Gas, Inc., the truly interested party to the question of commercially reasonable sale has not been made a party to these proceedings.' (App. 67). Unfortunately for Mattingly, however, he never raised and 'commercially reasonable' issue in his federal case and thus although not bound by res judicata we are unable to consider this issue because it is not properly before us.[6] Although Mattingly argues this issue on appeal, we do not consider issues not raised in the district court and argued for the first time on appeal.[7]
 
 
 20
 Since plaintiff may not avail himself of that issue raised in the state court which was not raised in the federal litigation, the only remaining question is whether he can avail himself of the one issue raised in the federal proceeding which was not raised in the state court--abuse of process. The answer is that he may not.
 
 
 21
 A federal court is required to give res judicata effect to issues actually litigated in state court as well as to issues which could have been litigated but were not raised. Jones v. City of Alton, Ill., 757 F.2d 878 (7th Cir. 1985). It would appear that the abuse of process issue could have been raised in the state court proceedings. It is also clear that Kentucky follows the rule that res judicata applies not only to issues disposed of but equally to related issues which were proper subjects of litigation in the first suit. Egbert v. Curtis, 695 S.W.2d 123 (Ky. App. 1985).
 
 
 22
 Even if that were not the case or if one were to conclude that raising an abuse of process issue in a proceeding to quash a garnishment is not proper, plaintiff still must lose on this issue. Once the Kentucky court has ruled that the garnishments were proper, an attempt to later assert the garnishments as the basis for an abuse of process claim is barred by the principle of collateral estoppel.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Nothing further will be said relative to the 42 U.S.C. Sec. 1983 claim since plaintiff concedes that this claim was properly dismissed
 
 
 [2]
 It is disputed as to when Citizens actually took possession of this collateral, but it is unnecessary for us to resolve this issue in this appeal. It also appears that even if the collateral had been liquidated it would not have produced sufficient funds to satisfy the judgment against Mattingly although it is not clear from this record just what the actual value of the equipment may have been
 
 
 [3]
 Citizens was thus the garnishor plaintiff and the garnishee defendant in the same action
 
 
 [4]
 The deference given to state court judgments is mandated by statute as well as judicial precedent. 28 U.S.C. Sec. 1738 provides in pertinent part: 'Such . . . judicial proceedings .. . [of any state] shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . ..'
 
 
 [5]
 Although there can be no question that the Kentucky Court of Appeals decided this issue--they did so with a minimum of elaboration. Essentially they held that Citizens held a valid judgment against Mattingly and further that Citizens held property belonging to Mattingly. Under such circumstances the court concluded that the Kentucky garnishment statute (KRS 425.501) authorized a garnishment of this nature
 
 
 [6]
 We note in passing that our decision in U.S. v. Willis, 593 F.2d 247 (6th Cir. 1979) would appear to be contrary to that suggested by the Kentucky appellate court on the issue of waiver as it relates to the rule of commercial reasonableness. Willis also holds that where an SBA loan is involved, federal law is controlling with respect to the rule of commercial reasonableness
 
 
 [7]
 There is apparently a state court action currently pending in the Circuit Court for Jefferson County, Kentucky, in which this issue is being litigated. We also note that plaintiff's argument that the federal court can act to correct an erroneous state decision is not well-founded. Union Light v. Blackwell's Admin., 291 S.W. 2d. 539 (Ky. 1956), relied on by plaintiff is not apposite