Paul ELWELL and Roxanne Elwell, Appellants,

v.

Sharon STONE, Guardian for Mary Ghee McKenney and Mary Ghee McKenney, Appellees.

No. 89–CA–1298–MR.

Court of Appeals of Kentucky.

May 25, 1990.

Rehearing Denied Aug. 3, 1990.

Discretionary Review Denied by Supreme Court Dec. 19, 1990.

Grover S. Cox, Louisville, for appellants.

ceed him. However, that is mercifully not an issue before us.

J. Andrew White, Louisville, for appellees.

Before CLAYTON, DYCHE and LESTER, JJ.

LESTER, Judge.

This is an appeal from a judgment entered upon a jury verdict awarding damages, including punitive in the sum of $41,824, against appellants for their depletion of the estate of Mary Ghee McKenney, an elderly person lacking mental capacity to manage her own affairs.

In early 1987, Mary McKenney, who had passed her 90th birthday, was found to be lacking in informed consent and in need of assistance in handling her financial affairs by an interdisciplinary team of social workers and a psychiatrist. The report led to the appointment of a curator, the Hon. John Mackey of the Louisville Bar, who is now deceased. At some point after the appointment, McKenney moved from a home she owned, together with other realty, namely a farm, into that of Paul and Roxanne Elwell and from that time forward Mary's estate in the form of cash savings and her house found its way into the hands of the appellants. One Sharon Stone, a niece of Mary McKenney, eventually located her aunt and was designated guardian and, in that capacity, brought an action, based in fraud and undue influence, for conversion of the estate. The cause was tried to a jury and a verdict in the sum above mentioned was returned for diminution in the value of real estate ($1,650), conversion of cash ($28,000), loss of interest ($1,500), loss of hospitalization payments ($674), and punitive damages ($10,000), all of which was ordered as joint and several liability as to the Elwells.

It would serve little purpose to recount all the sordid details surrounding the machinations of appellants in their successful efforts to reduce Mary McKenney to something less than a pauper, for all of these are well known to the parties and their counsel having been fully developed in several days of trial and recited to us in both briefs to the extent of some eighteen pages. Even though the six points raised by the Elwells to this Court are couched in language ostensibly presenting legal issues, they collectively seek the substitution of their interpretation of the facts for that of the jury. As an example, we are urged to accept the evidence of a lay person as to McKenney's mental capacity for that of the psychiatrist and the social workers. As to undue influence, it is argued that only a suspicion thereof is insufficient upon which to base a judgment. From the record it is difficult to argue with the cold factual realities that McKenney was ripe for financial exploitation, that she was exploited, that the Elwells did it and they got the elderly lady's estate. The evidence goes far beyond "a scintilla."

Appellants expend a portion of their argument upon reviewing the elements of fraud, but this overlooks the fact that the cause of action was also couched in undue influence as well.

What is most disturbing about this appeal is appellants' complete disregard of CR 76.12(4)(c)(iv) to the effect that a brief must contain:

An "ARGUMENT" conforming to the Statement of Points and authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law *and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.* (emphasis added)

The purpose of the rule is set out in 7 Bertelsman and Phillips, *Kentucky Practice*, CR 76.12(4)(c)(iv), Comment 4 (4th ed. 1989PP), wherein the authors point out:

The new amendment makes it mandatory that an attorney cite to the record where the claimed assignment of error was properly objected to or brought to the attention of the trial judge. This amendment is designed to save the appellate court the time of canvassing the record in order to determine if the claimed error was properly preserved for appeal.

About a year and a half after the effective date (January 1, 1985) of the rule, Chief Justice Stephens, writing for the majority in *Skaggs v. Assad, By and Through Assad,* Ky., 712 S.W.2d 947, 950 (1986), in reversing this Court in part, emphasized the necessity of compliance when he wrote:

> It goes without saying that errors to be considered for appellate review must be precisely preserved and identified in the lower court. *Combs v. Knott County Fiscal Court,* [283] Ky. [456], 141 S.W.2d 859 (1940); CR 76.12(4)(c)(iv) (1-1-85). This clearly has not been done in the case at bar and the Court of Appeals erred in concluding that it had been.

This tribunal assumed the Supreme Court meant what it said for we wrote through Judge Dunn in *Massie v. Persson,* Ky. App., 729 S.W.2d 448, 452 (1987):

> CR 76.12(4)(c)(iv) in providing that an appellate brief's contents must contain at the beginning of each argument a reference to the record showing whether the issue was preserved for review and in what manner emphasizes the importance of the firmly established rule. that the trial court should first be given the opportunity to rule on questions before they are available for appellate review. It is only to avert a manifest injustice that this court will entertain an argument not presented to the trial court. (citations omitted).

Ironically enough, appellee directs our attention to the fact that three of the alleged six errors assigned by appellants were not preserved and no refutation is made by reply brief.

We have taken an overall view of this lengthy record and find no manifest injustice and decline further to address any issues not presented in accordance with CR 76.12(4)(c)(iv) except to say, if any errors there be, they were harmless.

The judgment is affirmed.

All concur.