RENDERED: AUGUST 26, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0538-DG

TONYA FORD												APPELLANT

V.								ON REVIEW FROM COURT OF APPEALS
								NO. 2017-CA-0833
								TAYLOR CIRCUIT COURT NO. 10-CR-00162

COMMONWEALTH OF KENTUCKY										APPELLEE

## OPINION OF THE COURT BY JUSTICE KELLER

## AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

Tonya Ford (Ford) was convicted of the murder of her husband, David Ford (David). Her conviction was affirmed by this Court on direct appeal. She filed a motion to vacate the judgment pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42 with the trial court, which was denied. The Court of Appeals affirmed the trial court. This Court granted Ford's motion for discretionary review. After a thorough review of the record and arguments of the parties, we affirm in part, reverse in part, and remand to the Court of Appeals.

## I. BACKGROUND

In Ford's direct appeal of her conviction for murder, this Court briefly described the factual background of the case. We explained:

In February of 2009, only days before Valentine's Day, Lebanon Police Officer David Ford was found dead in his home, the result of a gunshot to the back of his head as he sat at the family's computer. The jury found that the fatal shot was delivered by the vengeful hands of David's wife—the Appellant, Tonya Ford.

The Fords had a tumultuous marriage and were living separately at the time of his murder. Chief among their grievances was David's extramarital affair with Mary Ramos. At the time of his murder, David lived with Ms. Ramos while Appellant was searching for an apartment so that she could move out of the family home. On the day of the murder, emergency personnel were dispatched to the scene in response to a 911 phone call placed by the Appellant stating that her husband had been shot.

A detective for the Kentucky State Police took charge of the investigation and initially interviewed Appellant. After further investigation, the detective interviewed Appellant on two additional occasions, wherein she revealed evidence implicating her as the shooter. As a result, Appellant was indicted on October 19, 2010, on one count of murder.

*Ford v. Commonwealth*, 2012-SC-000624-MR, 2014 WL 1118198, at *1 (Ky. Mar. 20, 2014). Ford proceeded to trial in front of a Taylor Circuit Court jury. In our prior opinion, we summarized the evidence presented against Ford as follows:

First, the jury was presented with the recording wherein Appellant's mother disclosed that Appellant admitted to her that she killed David. Second, two witnesses testified that Appellant stated she would kill David if she ever discovered he was cheating. Third, cell phone evidence contradicted Appellant's alibi that she was not present at the residence around the time of the murder. The jury was also presented with evidence that Appellant's car was seen at the residence prior to David's murder, although the precise timeframe was unclear. Fourth, Appellant's fingerprints were found on a threatening note discovered near David's body. Finally, when informed that she would be subjected to a gunshot residue test, Appellant washed her hands and then later denied having done so.

2

*Id.* at *3. The jury found Ford guilty and recommended a sentence of twenty years. The trial court sentenced Ford in accord with the jury's recommendation.

Ford appealed her conviction to this Court. She asserted several issues on direct appeal, one of which was that the jury instruction for murder violated her right to a unanimous verdict because it included language that would allow a jury to find her guilty of murder either as a principal actor or under a complicity theory. *Id.* at *4. This issue was not properly preserved at the trial court level, so we reviewed it for palpable error. *Id.*

In discussing the jury instruction issue, we explained, "a jury may be instructed on multiple theories of guilt in a single instruction without violating the unanimity requirement if the evidence would support conviction under each theory." *Id.* (citing *Robinson v. Commonwealth*, 325 S.W.3d 368, 370 (Ky. 2010)). However, in Ford's case, "there was absolutely no evidence to support the aiding, abetting, or counseling instruction." *Id.* We went on to quote *Travis v. Commonwealth*, 327 S.W.3d 456, 463 (Ky. 2010), for its holding that "if there is no reasonable possibility that the jury actually relied on the erroneous theory—in particular, where there is no evidence of the theory that could mislead the jury—then there is no unanimity problem." *Ford*, 2014 WL 1118198, at *4. Finally, we held that although the jury instructions were erroneous, "there [was] no reasonable possibility that the jury actually relied on the erroneous theory." *Id.* at *5 (quoting *Travis*, 327 S.W.3d at 463).

3

On June 16, 2015, Ford, through counsel, filed a motion to vacate her conviction pursuant to RCr 11.42. Ford asserted multiple claims of both ineffective assistance of counsel and prosecutorial misconduct. One allegation of ineffective assistance of counsel stemmed from her trial counsel's failure to object to the erroneous jury instruction.

The trial court held an extensive evidentiary hearing on Ford's RCr 11.42 motion. At that hearing, Ford's trial counsel testified that he did not tender any jury instructions. He did not know why he had not objected to the complicity language in the murder instruction stating, "I didn't have a big problem with the jury instructions, personally." Patti Brockman, who was the foreperson of the jury, also testified at Ford's RCr 11.42 hearing. She testified that she and the other jurors knew that Ford could be found guilty of either committing the murder herself or aiding, abetting, or counseling another individual in committing the murder. She testified that she believed Ford had aided, abetted, or counselled another individual to commit the act and that was the basis of her guilty verdict. Karen Anderson, who was also a juror on Ford's case, also testified that she knew she could find Ford guilty of either killing David herself or of aiding and abetting another individual in killing David. She testified she believed Ford killed David and based her guilty verdict on this belief.

The trial court found both of the jurors credible and believed they were both telling the truth. However, the court, citing *Hodge v. Commonwealth*, 116 S.W.3d 463, 467–68 (Ky. 2003), stated that a movant in an RCr 11.42 action cannot raise issues in that action that should have been brought on direct

4

appeal.[1] The court found that complaints about jury instructions should be brought on direct appeal, and in fact were raised by Ford in her direct appeal.

The trial court next noted that juror statements cannot be used to impeach their own verdicts. The trial court explained that RCr 10.04 provides one exception, that a juror's testimony can be used to "establish that the verdict was made by lot." *Mattox v. United States*, 146 U.S. 140, 149 (1892), provided another exception, that a juror "may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind." The trial court went on to note that Kentucky recognizes that under the Due Process Clause, "courts should consider juror testimony concerning overt acts of misconduct by which extraneous and potentially prejudicial information is presented to the jury." *Commonwealth v. Abnee*, 375 S.W.3d 49, 54 (Ky. 2012) (citations omitted). The Supreme Court of the United States, in *Warger v. Shauers*, 574 U.S. 40, 51 (2014), defined "extraneous information." "[I]nformation is deemed 'extraneous' if it derives from a source 'external' to the jury." *Id.* (citing *Tanner v. United States*, 483 U.S. 107, 117 (1987)). In turn, "'[e]xternal matters' include publicity and information related specifically to the case the jurors are meant to decide, while 'internal' matters include the general body of experiences that jurors are understood to bring with them to the jury room." *Id.* (citations omitted).

---

[1] We note that *Hodge* was overruled on this point by *Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009). The trial court did not recognize this negative treatment.

Finally, the trial court applied the *Strickland*[2] test to Ford's trial counsel's failure to object to the erroneous jury instruction. The trial court found that the failure of trial counsel to object to the jury instructions was deficient. However, the trial court also found "the failure of trial counsel to object is an insufficient basis to set aside the conviction pursuant to Criminal Rule 11.42." The trial court did not grant Ford relief on any of the claims in her motion to vacate her conviction.

Ford appealed the trial court's denial of her RCr 11.42 motion to the Court of Appeals. The Court of Appeals described what happened next as follows:

> On June 14, 2017, Ford's appointed counsel tendered a motion to increase the maximum page limit of her appellate brief from 25 to 40 pages. That motion was granted by way of an order entered on July 12, 2017. Thereafter, counsel filed a renewed motion seeking leave to file an appellate brief in excess of forty pages. That motion was denied on January 22, 2018. Counsel's brief was returned to her as noncompliant with the 40-page limitation, and she was ordered to file a compliant brief within 30 days. In response, Appellant's counsel filed her brief on February 21, 2018.

*Ford v. Commonwealth*, 2017-CA-000833-MR, 2019 WL 1872106, at *1 (Ky. App. Apr. 26, 2019). The Court of Appeals went on to conclude:

> Appellant's brief is not in conformity with Kentucky Rules of Civil Procedure ("CR") 76.12(f)(a)(ii). This rule requires the appellate brief to utilize 12-point font, with a 1.5-inch margin on the left side and 1-inch margins on all other edges. Appellant's brief appears to employ a font smaller than that required by the rule, with more lines per page than can be achieved with 12-point font, and margins which are smaller than 1.5 inches on the left and 1 inch on all other edges. The result is that counsel has compressed more than 40 pages of material within the 40-page limit in

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

6

nonconformity with the Civil rules and with the Court's prior orders. Appellant's noncompliance with CR 76.12(4)(a)(ii) appears to be intentional.

*Id.* at *2.

The Court of Appeals, relying on *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010), determined that it had three options for dealing with Ford's counsel's failure to follow the civil rules: "(1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only, *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)." *Ford*, 2019 WL 1872106, at *2 (quoting *Hallis*, 328 S.W.3d at 696). The Court of Appeals then chose "to examine the matter for manifest injustice only." *Id.*

Regarding Ford's claim of ineffective assistance of counsel for her trial counsel's failure to object to the erroneous jury instruction, the Court of Appeals noted that the "matter was addressed on direct appeal to the Kentucky Supreme Court, whereupon that Court determined that while the inclusion of complicity in the instructions was erroneous, it did not constitute palpable error and did not affect the judgment." *Id.* at *5. Citing to *Union Light, Heat & Power Co. v. Blackwell's Adm'r*, 291 S.W.2d 539, 542 (Ky. 1956), the Court of Appeals determined that our prior disposition of the issue became the law of the case in the RCr 11.42 proceeding and therefore found no error in the trial court's order on this issue. *Id.* The Court of Appeals further stated, "Having determined that this language did not affect the judgment, it follows that it

7

does not run afoul of *Strickland.* Again, we find no defect in the proceedings."

*Id.*

At some point after submitting Ford's Appellant's Brief to the Court of Appeals, Ford's counsel resigned from the Department of Public Advocacy, and Ford was assigned a different attorney from that agency. After the Court of Appeals rendered its opinion in the matter, Ford's new attorney filed a petition for rehearing and a motion for leave to file an amended brief. He also tendered a brief that conformed to the civil rules. The Court of Appeals denied these motions.

Ford then filed a motion for discretionary review with this Court, asking the Court to review the Court of Appeals' opinion, specifically on the issues of the appropriate sanction for a violation of CR 76.12 and the merits of Ford's claim of ineffective assistance of counsel for her trial counsel's failure to object to the erroneous jury instruction. We granted her motion.

## II. ANALYSIS

Before addressing the merits of Ford's claim of ineffective assistance of counsel based on her trial counsel's failure to object to the erroneous jury instruction, we are compelled to address the Court of Appeals' use of the manifest injustice standard of review.

### A. Standard of Review

CR 76.12(8) provides the sanctions available to an appellate court when a party files a brief that fails to comply with that rule. It states,

8

Penalties.

(a) A brief may be stricken for failure to comply with any substantial requirement of this Rule 76.12.

(b) If the appellant's brief has not been filed within the time allowed, the appeal may be dismissed.

(c) If the appellee's brief has not been filed within the time allowed, the court may: (i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (iii) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

CR 76.12(8). Subsection (a) specifically provides that an appellate court may strike a party's brief for failure to comply with a substantial requirement of CR 76.12. CR 73.02(2) provides a list of more general sanctions available to an appellate court when a party fails to follow all applicable rules. CR 73.02(2) states,

The failure of a party to file timely a notice of appeal, cross-appeal, or motion for discretionary review shall result in a dismissal or denial. Failure to comply with other rules relating to appeals or motions for discretionary review does not affect the validity of the appeal or motion, but is ground for such action as the appellate court deems appropriate, which may include:

(a) A dismissal of the appeal or denial of the motion for discretionary review,

(b) Striking of pleadings, briefs, record or portions thereof,

(c) Imposition of fines on counsel for failing to comply with these rules of not more than $500, and

(d) Such further remedies as are specified in any applicable Rule.

As can be seen by the plain language of these rules, aside from the catch-all sanction of "such action as the appellate court deems appropriate," a review for

9

manifest injustice is not included as a possible sanction for a violation of the rules regarding the format of appellate briefs.

In this case, the Court of Appeals relied on a previous Court of Appeals decision, *Hallis v. Hallis*, 328 S.W.3d 694, to justify its use of a manifest injustice standard of review. In *Hallis*, the offending party's brief included "a number of relatively minor omissions and improper formatting decisions" the court chose not to specify, as well as "no citations to the record and no statement of preservation of the issues he raises on appeal." *Id.* at 695–96. The court used even more emphatic language when it explained that the offending party "fail[ed] utterly to cite to the record and he fail[ed] to tell this [c]ourt how he preserved his argument before the family court." *Id.* at 698. The court recognized three options for "when an appellate advocate fails to abide by the rules . . . : (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only, *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)." *Id.* at 696. The court decided not to strike the party's brief because he was a pro se litigant but instead chose to review the issues for manifest injustice. *Id.* at 698.

The *Hallis* court, in turn, relied on *Elwell v. Stone*, 799 S.W.2d 46, another Court of Appeals decision, to justify its use of a manifest injustice standard of review. *Id.* at 696. In *Elwell*, as in *Hallis*, the offending party failed to include a statement of preservation in his brief as required by CR 76.12. *Elwell*, 799 S.W.2d at 47. The *Elwell* court explained,

10

[t]he purpose of the rule is set out in 7 Bertelsman and Phillips, *Kentucky Practice*, CR 76.12(4)(c)(iv),[3] Comment 4 (4th ed. 1989PP), wherein the authors point out:

> The new amendment makes it mandatory that an attorney cite to the record where the claimed assignment of error was properly objected to or brought to the attention of the trial judge. This amendment is designed to save the appellate court the time of canvassing the record in order to determine if the claimed error was properly preserved for appeal.

*Id.* The court went on to quote from *Massie v. Persson*, 729 S.W.2d 448, 452 (Ky. App. 1987), *overruled on other grounds by Conner v. George W. Whitesides Co.*, 834 S.W.2d 652 (Ky. 1992), saying,

> CR 76.12(4)(c)(iv) in providing that an appellate brief's contents must contain at the beginning of each argument a reference to the record showing whether the issue was preserved for review and in what manner emphasizes the importance of the firmly established rule that the trial court should first be given the opportunity to rule on questions before they are available for appellate review. It is only to avert a manifest injustice that this court will entertain an argument not presented to the trial court.

*Id.* at 48.

A review of both *Hallis* and *Elwell* make clear that the manifest injustice standard of review is reserved only for errors in appellate briefing related to the statement of preservation. If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved. Appellate courts

> review[] unpreserved claims of error on direct appeal only for palpable error. To prevail, one must show that the error resulted in "manifest injustice." RCr 10.26 provides:

---

[3] The version of CR 76.12(4)(c)(iv) in effect at the time of *Elwell* was substantially the same as the current CR 76.12(4)(c)(v).

11

> A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that *manifest injustice* has resulted from the error. (Emphasis added).

*Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). As such, a review for manifest injustice is an inappropriate sanction for briefing errors that relate only to the formatting rules.

This Court has cited to *Hallis*'s three options for dealing with a brief that does not comply with the appellate rules on two occasions. *See Sloan v. Commonwealth*, No. 2013-SC-000446-MR, 2014 WL 5410289, *3 (Ky. Oct. 23, 2014); *Commonwealth v. Roth*, 567 S.W.3d 591, 595 n.9 (Ky. 2019). In *Sloan*, the "[a]ppellant merely provided a list of citations to the record without indicating how any particular point relates to any particular allegation of [prosecutorial] misconduct." 2014 WL 5410289, at *3. We held that this "collage of citations to the video record without correlating them to a specific issue does not comply with [CR] 76.12(4)(c)(v)" and chose to review those allegations of error for manifest injustice only. *Id.* at *3–4. As such, *Sloan*'s review for manifest injustice was wholly consistent with the rule we delineate today.

We also cited to *Hallis* in a footnote in *Roth*. 567 S.W.3d at 595 n.9. In that case, the Commonwealth's brief "contain[ed] no citations to the record," which "prompted Roth to move this Court to strike the Commonwealth's brief and dismiss the appeal." *Id.* at 594. Although we included *Hallis*'s three options

12

in the footnote, we chose to exercise our discretion to grant Roth's motion and strike the Commonwealth's brief and dismiss the appeal. *Id.* at 596. *Roth* is in no way inconsistent with the limitations on a manifest injustice standard of review that we delineate today.

Although we have determined that the Court of Appeals' use of the manifest injustice standard was inappropriate, we acknowledge the apparent intentional misconduct of Ford's counsel. In no way should this Opinion be read to condone such conduct or to suggest appellate courts have no redress for this type of conduct. An appellate court, when faced with a situation such as this, can issue a show cause order for the offending attorney and, after a hearing, impose contempt sanctions on the attorney if warranted. A court can also report unethical conduct to the Kentucky Bar Association and, in fact, may be required to in certain circumstances pursuant to Kentucky Supreme Court Rule 3.130(8.3).

Now that we have established that the Court of Appeals' use of the manifest injustice standard was an inappropriate sanction for Ford's counsel's violation of the formatting rules for appellate briefs, we must discuss the appropriate standard of review.

The standard for a trial court's review of a claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. at 687 and adopted in *Gall v. Commonwealth*, 702 S.W.2d 37, 39 (Ky. 1985). This standard is two-pronged. The defendant must show that: (1) trial counsel's performance was deficient, and (2) trial counsel's deficient performance prejudiced him.

13

*Strickland*, 466 U.S. at 687. The defendant must show that counsel's performance "fell below an objective standard of reasonableness" and was so prejudicial that he was deprived "of a fair trial . . . whose result is reliable" *Id.* at 687–88.

In reviewing an RCr 11.42 proceeding, the appellate court reviews the trial court's factual findings for clear error while reviewing the application of its legal standards and precedents de novo. *Commonwealth v. Pridham*, 394 S.W.3d 867, 875 (Ky. 2012). For an RCr 11.42 motion to be successful, the defendant "must convincingly establish he was deprived of some substantial right justifying the extraordinary relief afforded by the post-conviction proceeding." *Bratcher v. Commonwealth*, 406 S.W.3d 865, 869 (Ky. App. 2012) (citing *Dorton v. Commonwealth*, 433 S.W.2d 117, 118 (Ky. 1968)).

On appellate review, great deference is afforded to counsel's performance. There is a strong presumption that counsel acted reasonably and effectively. *Brown v. Commonwealth*, 253 S.W.3d 490, 498 (Ky. 2008); *Mills v. Commonwealth*, 170 S.W.3d 310, 328 (Ky. 2005). To succeed in his ineffective assistance of counsel claim, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). In evaluating trial counsel's performance, "the reviewing court must focus on the totality of evidence before the judge or jury and assess the overall performance of counsel throughout the case in order to determine whether the identified acts or omissions overcome the presumption that counsel rendered reasonable

14

professional assistance." *Haight v. Commonwealth*, 41 S.W.3d 436, 441–442 (Ky. 2001) (citations omitted), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009).

In addition to showing deficient performance, success on an ineffective assistance of counsel claim requires a defendant show that he was prejudiced by the deficient performance. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

As we have previously explained,

> [s]etting aside a conviction just because counsel's error may have caused a different outcome gives the defendant too great of an advantage. Instead the question should be absent counsel's errors, would the factfinder have had a reasonable doubt respecting guilt? Kentucky courts have previously articulated this standard as counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won. The critical issue is not whether counsel made errors but whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory.

*Brown*, 253 S.W.3d at 499 (internal citations and quotation marks omitted).

## B. Ineffective Assistance of Counsel

Ford argues that her trial counsel's failure to object to the inclusion of complicity language in the jury instruction for murder amounted to ineffective assistance of counsel. As discussed previously, Ford's trial counsel testified at the RCr 11.42 hearing that he did not tender any jury instructions. He testified

15

that he reviewed the instructions submitted by the Commonwealth and did not know why he did not object to inclusion of the complicity language except that he "didn't have a big problem with the jury instructions."

Two jurors from Ford's trial also testified at the RCr 11.42 hearing. They both testified that they understood they could find Ford guilty if she herself shot David or if she aided or abetted someone else in shooting David. One juror testified she believed Ford shot David herself while the other juror testified she believed Ford aided, abetted, or counseled someone else to shoot David.

The trial court found it "incomprehensible in a murder case" that Ford's trial counsel neither objected to the erroneous jury instructions nor tendered any instructions of his own. The trial court further found that "clearly the failure of trial counsel to object to these jury instructions was deficient." However, based on its beliefs that Ford's complaints about the jury instructions were brought on direct appeal and that jurors cannot impeach their own verdicts, the trial court concluded the failure to object was an insufficient basis to set aside Ford's conviction.

Ford appealed to the Court of Appeals which held that our Court's holding in Ford's direct appeal, that the error in the jury instructions did not constitute palpable error and did not affect the judgment, was the law of the case. Therefore, the Court of Appeals found no error in the trial court's ruling. Ford appealed to this Court.

We begin our analysis by determining whether Ford's trial counsel's performance was deficient. To this Court, the question of whether Ford's

16

counsel's performance was deficient for failing to object to the erroneous jury instructions is not seriously debated by either side. Her counsel could not explain why he did not object except to say that he did not see a problem with the instructions. The failure to object, therefore, was not a strategic choice. Accordingly, we hold that Ford's counsel's performance was deficient in this regard.

We next must determine whether Ford's trial counsel's deficient performance prejudiced her. To do so, we must clarify the law on various relevant issues. First, we must determine whether the jurors' testimony can be considered by either the trial court or this Court.

RCr 10.04 states, "A juror cannot be examined to establish a ground for a new trial, except to establish that the verdict was made by lot." In her brief to this Court, Ford argues that a unanimous verdict question falls squarely within the rule because it is a question of whether the verdict was "made by the lot." However, Ford's interpretation of the rule is mistaken, as is her insertion of the word "the" into the rule, thereby changing its meaning. Black's Law Dictionary defines "verdict by lot" by referring the reader to "chance verdict." *Verdict*, BLACK'S LAW DICTIONARY (11th ed. 2019). The definition of "chance verdict," in turn, states, "[a] now-illegal verdict, arrived at by hazard or lot.—Also termed *gambling verdict*; *verdict by lot*." *Id.* (italics in original). As can be seen by these definitions, "verdict by lot" has nothing to do with the unanimity of a verdict. Instead, it is about the way in which the verdict was reached, whether by hazard or by gambling or in some other way by chance. This rule "must give

17

way to various constitutional requirements, including due process of law,"

*Commonwealth v. Abnee*, 375 S.W.3d 49, 53 (Ky. 2012) (citing *Taylor v. Commonwealth*, 175 S.W.3d 68, 74 (Ky. 2005)), and there are a few exceptions to this rule that we will discuss shortly. First, however, we are compelled to discuss the policy behind this rule.

As the United States Supreme Court explained,

> Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because, being personal, it is not accessible to other testimony. It gives to the secret thought of one the power to disturb the expressed conclusions of twelve. Its tendency is to produce bad faith on the part of a minority; to induce an apparent acquiescence with the purpose of subsequent dissent; to induce tampering with individual jurors subsequent to the verdict.

*Mattox*, 146 U.S. at 148 (quoting *Perry v. Bailey*, 12 Kan. 539, 545 (1874)). This Court has expressed, in similar terms, the rationale behind disallowing jurors to impeach their own verdict through their testimony alone. We have stated,

> The rule serves several important purposes. It aids in protecting the sanctity and finality of judgments based upon jury verdicts. It promotes open and frank discussion among the jurors during deliberations. By barring the use of a juror's testimony to attack a verdict, the rule protects individuals who have served on juries from potentially corruptive influences that, in the hope of altering a verdict, might otherwise be brought to bear against a former juror.

*Abnee*, 375 S.W.3d at 53.

Despite RCr 10.04, jurors are permitted to testify as to any outside influences that may have played an inappropriate role in the jury's deliberations. The United States Supreme Court explained,

> a juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind. So a juryman may testify in

18

denial or explanation of acts or declarations outside of the jury room, where evidence of such acts has been given as ground for a new trial.

*Mattox*, 146 U.S. at 149 (quoting *Woodward v. Leavitt*, 107 Mass. 453, 466 (1871)). "[B]y drawing this distinction, verifiable evidence of a jury's consideration of extraneous prejudicial information could be considered by courts while still respecting the finality of jury verdicts by disallowing testimony as to the unverifiable thoughts of jurors." *Doan v. Brigano*, 237 F.3d 722, 732 (6th Cir. 2001) (citing *Mattox*, 146 U.S. at 148–49), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003).

The Supreme Court defined "extraneous" information as any information that comes "from a source 'external' to the jury." *Warger*, 574 U.S. at 51 (citing *Tanner*, 483 U.S. at 117). Matters that are "external" to the jury "include publicity and information related specifically to the case the jurors are meant to decide." *Id.* (citations omitted). "Internal" matters, on the other hand, "include the general body of experiences that jurors are understood to bring with them to the jury room." *Id.* (citations omitted). Further,

[w]hether the jury understood the evidence presented at trial or the judge's instructions following the presentation of the evidence, whether a juror was pressured into arriving at a particular conclusion, and even whether jurors were intoxicated during deliberations, are all internal matters for which juror testimony may not be used to challenge a final verdict.

*Doan*, 237 F.3d at 733 (citing *Tanner*, 483 U.S. at 117–22). Finally, this Court has previously held that an affidavit of a juror that he did not agree with the

verdict cannot be received by the trial court. *Grace v. Commonwealth*, 459 S.W.2d 143 (Ky. 1970).

Applying the above legal principles and precedent to the case before us, it is clear that the jurors' testimony regarding why they voted to convict Ford was inadmissible to impeach their verdict. This testimony was about matters that were internal to each juror's deliberative process. The testimony was not about matters external to the jury deliberation that improperly influenced its decision-making. Accordingly, the trial court could not consider it, and neither can we, in determining whether Ford's counsel was ineffective in failing to object to the erroneous jury instructions.[4]

We next must determine whether our holding on direct appeal that the error in jury instructions did not amount to palpable error is the law of the case for this RCr 11.42 action. It is clear under *Martin v. Commonwealth*, 207 S.W.3d 1, that it is not. In *Martin*, we held that "an unsuccessful attempt to prevail upon a palpable error claim and an adverse ruling from the Court on direct appeal does not preclude the same claim of error from being considered again as ineffective assistance of counsel." *Id.* at 3. We explained,

> When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process. However, on collateral attack, when claims of ineffective assistance of counsel are before the court, the inquiry is

---

[4] Ford urges this Court to resolve a perceived conflict between *Johnson v. Commonwealth*, 12 S.W.3d 258 (Ky. 1999), and *Travis v. Commonwealth*, 327 S.W.3d 456 (Ky. 2010). As is discussed later in this Opinion, a direct appeal review for palpable error and a review of an ineffective assistance of counsel claim involve distinct and different inquiries. As such, it is inappropriate in this matter for us to attempt to resolve any potential conflict that might exist between these two cases.

broader. In that circumstance, the inquiry is not only upon what happened, but why it happened, and whether it was a result of trial strategy, the negligence or indifference of counsel, or any other factor that would shed light upon the severity of the defect and why there was no objection at trial. Thus, a palpable error claim imposes a more stringent standard and a narrower focus than does an ineffective assistance claim.

*Id.* at 5. Because "the dispositive inquiries differ," we held that "as a matter of law, a failure to prevail on a palpable error claim does not obviate a proper ineffective assistance claim." *Id.* at 2, 5.

Having thoroughly explored the law as it relates to Ford's claim of ineffective assistance of counsel, we must now determine whether her counsel's deficient performance prejudiced her. In doing so, we must be mindful that only if the factfinder would have had a reasonable doubt respecting guilt absent counsel's deficient performance is sufficient prejudice established. *Brown*, 253 S.W.3d at 499. We have explained that counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" or "that defeat was snatched from the hands of probable victory." *Id.* (internal citations and quotation marks omitted). After a thorough review of the record, we conclude the prejudice resulting from Ford's counsel's performance did not rise to this level.

More than sufficient evidence was presented to the jury for it to convict Ford even under proper instructions. Two different witnesses testified that prior to the murder they heard Ford make statements about killing David. The jury heard Ford's biological mother's recorded statements in which she said that Ford confessed to her that she murdered David, even though her mother

21

denied these statements were the truth while on the stand. Ford's cell phone records put her in close proximity to her home where the murder occurred within just minutes of the crime. The stories she told police officers during her three different interviews were inconsistent with each other and with much of the objective evidence detectives were able to develop. The jury heard the 911 call during which Ford told the dispatcher that her husband had been shot even though at least two witnesses testified that Ford could not have seen what caused David's wound from where she said she stood in the house. The jurors heard evidence that David and Ford both received threatening letters, and that David's co-worker and friend believed Ford wrote the letters. A threatening note on which Ford's fingerprint was found was recovered from near David's body. Ford washed her hands, and lied about doing so, after being told that the police were going to conduct a gun shot residue test on her. Finally, police investigated numerous alternative suspects but could not develop any evidence against them. After reviewing all of the evidence presented to the jury, we cannot say that her trial counsel's failure to object to the inclusion of complicity language in the jury instruction for murder "caused [Ford] to lose what [she] otherwise would probably have won." *Id.*

### III.    CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals, albeit for different reasons, on Ford's ineffective assistance of counsel claim relating to her trial counsel's failure to object to the erroneous jury instructions. We reverse the Court of Appeals on all other issues and remand to that court to

22

undertake a review of Ford's remaining claims utilizing the proper standard of review.

All sitting. Minton, C.J.; Hughes, Keller, Lambert, Nickell and VanMeter concur. Conley, J., concurs in result only.


COUNSEL FOR APPELLANT:

Samuel N. Potter
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Kenneth Wayne Riggs
Assistant Attorney General