RENDERED: AUGUST 4, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1316-MR

MARC HARDIN                                                                    APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.                    HONORABLE OLU A. STEVENS, JUDGE
ACTION NO. 14-CI-003678

THE JEFFERSON COUNTY BOARD
OF EDUCATION D/B/A JEFFERSON
COUNTY PUBLIC SCHOOLS;
CAROL ANN HADDAD, DISTRICT 6;
CHRIS BRADY, DISTRICT 7; CHUCK
HADDAWAY, DISTRICT 4; DAVID
A. JONES, JR., DISTRICT 2; DEBBIE
WESSLUND, DISTRICT 3; DIANE L.
PORTER, CHAIR, DISTRICT 1; DR.
DONNA M. HARGENS,
SUPERINTENDENT; DR. MICHAEL
RAISOR, CHIEF OPERATIONS
OFFICER; LINDA DUNCAN,
DISTRICT 5; AND STATE
EVALUATION APPEALS PANEL,
KENTUCKY BOARD OF
EDUCATION, KENTUCKY
DEPARTMENT OF EDUCATION,
EDUCATION AND WORKFORCE
DEVELOPMENT CABINET                                                            APPELLEES

OPINION
AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Marc Hardin appeals from an order of the Jefferson Circuit Court dismissing his claims against the Jefferson County Board of Education d/b/a the Jefferson County Public Schools (JCPS) and the State Evaluation Appeals Panel (SEAP).[1]  The dismissal is contrary to our opinion reversing a previous dismissal of Hardin's claims.  *Hardin v. Jefferson Cnty. Board of Education*, 558 S.W.3d 1 (Ky. App. 2018) ("*Hardin I*").  Thus, we reverse and remand the matter to the trial court, with the exception of one claim which was not resolved by *Hardin I*.

After serving as an administrator in another district for three years, Hardin served as an assistant principal at an elementary school within JCPS for two years.  Near the conclusion of that second year, the principal of Hardin's school recommended Hardin be demoted from assistant principal to teacher.  That recommendation was upheld by JCPS.  Hardin sued JCPS, arguing his demotion failed to comply with, among other things, the procedural protections afforded to

[1] Hardin named numerous other defendants and appellees, such as individual members of the Jefferson County School Board.  For simplicity's sake, we shall use "JCPS" to refer collectively to all parties associated with the Jefferson County Public Schools and "SEAP" to refer collectively to all statewide appellees and defendants.

-2-

school administrators by Kentucky Revised Statute (KRS) 161.765.[2] Hardin also raised an age discrimination claim and a claim that JCPS failed to comply with its internal evaluation procedures during the demotion process.

---

[2] At the time of Hardin's demotion, KRS 161.765 provided in relevant part:

> (1) A superintendent may demote an administrator who has not completed three (3) years of administrative service, not including leave granted under KRS 161.770, by complying with the requirements of KRS 161.760.
>
> (2) An administrator who has completed three years of administrative service, not including leave granted under KRS 161.770, cannot be demoted unless the following procedures have been complied with:
>
> > (a) The superintendent shall give written notice of the demotion to the board of education and to the administrator. If the administrator wishes to contest the demotion, he shall, within ten (10) days of receipt of the notice, file a written statement of his intent to contest with the superintendent . . . .
> >
> > (b) Upon receipt of the notice of intent to contest the demotion, a written statement of grounds for demotion, signed by the superintendent, shall be served on the administrator. The statement shall contain:
> >
> > > 1. A specific and complete statement of grounds upon which the proposed demotion is based, including, where appropriate, dates, times, names, places, and circumstances;
> > >
> > > 2. The date, time, and place for a hearing, the date to be not less than twenty (20) nor more than thirty (30) days from the date of service of the statement of grounds for demotion upon the administrator.
> >
> > (c) Upon receipt of the statement of grounds for demotion the administrator shall, within ten (10) days, file a written answer . . . .
> >
> > (d) . . . The board of education shall hear the case, with the board chairman presiding. The board, upon hearing the evidence and argument presented, shall retire to private chambers to arrive at a decision . . . .

JCPS moved to dismiss Hardin's petition under Kentucky Rule of Civil Procedure (CR) 12.02 for failure to state a claim upon which relief may be granted, arguing Hardin was not entitled to the protections of KRS 161.765 because he had not served as a school administrator for three years in JCPS. The trial court granted the motion in a terse order. Hardin appealed. We reversed.

First, we held that KRS 161.765 "does not require that the administrative service occur in the same school district." *Hardin I*, 558 S.W.3d at 6-7. Second, we held the court erred by dismissing Hardin's age discrimination claim without "provid[ing] any legal analysis" because Hardin had "adequately stated a claim for age discrimination . . . ." *Id.* at 9-10. Finally, we resolved Hardin's "claim related to the evaluation process utilized by JCPS." *Id.* at 10. Because it is directly relevant to this appeal, we relate our analysis at length:

> Hardin alleged in his complaint that JCPS arbitrarily applied and wholly failed to comply with its own administrator evaluation procedures when it disciplined and eventually demoted him. . . .

---

(e) Within five (5) days from the close of the hearing, the board of education shall advise the parties of its decision and shall take official action in the case.

(f) Appeal from final board action may be taken in the same manner and under the same provisions as an appeal from tribunal action under KRS 161.790.

The statute was amended in 2019, but the changes would not impact the outcome of this appeal.

. . .

Here, Hardin's claims related to JCPS' evaluation process were still percolating through administrative channels. He had not yet exhausted his administrative remedies when he filed his complaint. But failure to exhaust one's administrative remedies is not grounds to dismiss the complaint, *with prejudice*, under CR 12.02(f).

The more prudent and just course would have been for the circuit court to grant Hardin's request for a stay to allow the administrative process to reach finality. In any event, it is likely at this point that Hardin's administrative venture has reached its inevitable end and the matter is ripe for judicial review.

Accordingly, on remand we direct the circuit court to ascertain the status of Hardin's administrative appeal. If it has concluded, Hardin's claims related to JCPS' evaluation process may proceed in a manner agreeable to the circuit court and the parties; if it has not concluded, the circuit court shall hold the claims in abeyance until exhaustion has occurred.

Setting aside the exhaustion issue, JCPS argues Hardin has no right to appeal the SEAP's decision. Neither the statute (KRS 156.557) nor the regulation (704 KAR [Kentucky Administrative Regulation] 3:345) grants the right to appeal, JCPS asserts. We reject this argument.

Hardin's position is that JCPS acted arbitrarily when it disregarded its own evaluations process. The purpose of judicial review of administrative action is to eliminate arbitrariness. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission*, 379 S.W.2d 450, 456 (Ky. 1964). "On this ground the courts will assume jurisdiction even in the absence of statutory authorization of an appeal." *Id.*; *Reis v. Campbell County Bd. of Educ.*, 938 S.W.2d 880,

887 (Ky. 1996). Hardin properly invoked the circuit court's inherent authority to judicially review JCPS' allegedly arbitrary administrative actions even absent an express statutory provision granting a right to appeal.

*Id.* at 10-11 (some citations omitted).

On remand, the court granted Hardin leave to file an amended petition. That new petition added SEAP as a defendant and noted that SEAP had upheld Hardin's demotion shortly after *Hardin I* was issued. The new petition also incorporated by reference all the allegations in Hardin's previous petition.

JCPS quickly filed a motion to dismiss the new petition for failure to state a cognizable claim. Among other arguments, JCPS contended that unpublished decisions issued shortly after *Hardin I* made plain that SEAP's decisions were not subject to judicial review. *Travis v. State Evaluation Appeals Panel*, No. 2017-CA-001018-MR, 2019 WL 2068539, at *6 (Ky. App. May 10, 2019); *Geron v. Jefferson Cnty. Board of Education*, No. 2017-CA-000540-MR, 2018 WL 8262575 (Ky. App. Aug. 31, 2018).[3] SEAP filed a similar motion.

The trial court granted both motions and dismissed the entirety of Hardin's petition. Perplexingly, that order did not mention *Hardin I*. Instead, the

---

[3] *Travis* was originally issued in September 2018, but that opinion was withdrawn on rehearing and a new opinion was issued. Notably, the original opinion was designated for publication, but the revised opinion was not. Our Supreme Court denied discretionary review in October 2019. *Geron* was originally issued in August 2018. We denied rehearing in May 2019 but modified the opinion to note that it was no longer designated for publication. Our Supreme Court denied discretionary review in March 2020.

court held merely that SEAP's actions were not subject to judicial review pursuant to *Geron* and *Travis*. Hardin then filed this appeal.

Meanwhile, Hardin also filed a motion to alter, amend, or vacate in the trial court.[4] We held this appeal in abeyance for over a year until the trial court eventually denied Hardin's motion without analysis. In sum, the trial court dismissed Hardin's petition without addressing our opinion in *Hardin I* whatsoever. We returned the appeal to our active docket after the trial court denied Hardin's motion.[5]

Our Supreme Court has explained as follows the stringent standards governing motions to dismiss for failure to state a cognizable claim:

> A motion to dismiss for failure to state a claim upon which relief may be granted admits as true the material facts of the complaint. So a court should not grant such a motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved. Accordingly, the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true. This exacting standard of review eliminates any need by the trial court to make findings of fact; rather, the question is purely a matter of law. Stated another way, the court must ask if the facts

---

[4] In those circumstances, the trial court retains jurisdiction to rule on the motion to vacate and the premature appeal may be held in abeyance – which is what occurred here. *See* Kentucky Rule of Appellate Procedure (RAP) 3(E) (effective Jan. 1, 2023); former CR 73.02(1)(e).

[5] The record contains no adequate explanation for the protracted delay in resolving Hardin's motion to alter, amend, or vacate. Indeed, after waiting for over a year, we had to order the trial court to rule on the motion within ten days. We are keenly aware that the dockets of circuit courts across the Commonwealth are busy. Nonetheless, judges are obligated to perform their duties with diligence under Rules of the Supreme Court (SCR) 4.300, Canon 2, Rule 2.5(A).

-7-

alleged in the complaint can be proved, would the plaintiff be entitled to relief? Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue de novo.

*Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (internal quotation marks, footnotes, references, and ellipsis omitted).

One of the fundamental underpinnings of our jurisprudence is the law of the case doctrine,[6] which encompasses "a handful of related rules giving substance to the general principle that a court addressing later phases of a lawsuit should not reopen questions decided by that court or by a higher court during earlier phases of the litigation." *Brown v. Commonwealth*, 313 S.W.3d 577, 610 (Ky. 2010). One aspect of the doctrine is "the so-called mandate rule, [which] provides that on remand from a higher court a lower court must obey and give effect to the higher court's express or necessarily implied holdings and instructions." *Id.*[7]

---

[6] Law of the case may be spelled with or without hyphens between the words. *See, e.g.*, *Law of the Case*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[7] We emphatically reject JCPS' argument that the law of the case doctrine applies only to an appellate court's review of a trial court's evidentiary decisions. Kentucky's highest court did hold that "[w]hen an appellate court decides a question concerning evidence or instructions, the question of law settled by the opinion is final upon a retrial in which the evidence is substantially the same and precludes the reconsideration of the claimed error on a second appeal." *Siler v. Williford*, 375 S.W.2d 262, 263 (Ky. 1964). Nonetheless, the law of the case doctrine encompasses more than appellate decisions regarding evidentiary or instructional issues. Indeed, other Kentucky precedent holds that the law of the case doctrine "makes a final decision of an

-8-

Like most rules, however, the law of the case doctrine is subject to exceptions, even though it sometimes is inaccurately described as an "iron rule . . . ." *Union Light, Heat & Power Co. v. Blackwell's Adm'r*, 291 S.W.2d 539, 542 (Ky. 1956). For example, in rare situations of "great urgency demanded by a strong sense that an injustice should be corrected[,]" a court in a subsequent appeal of the same case may "simply announce[] that it was wrong in a previous opinion and proceed[] to examine the merits" anew. *Newman*, 451 S.W.2d at 420. That extremely rare exception has typically been applied when a previous decision was both "clearly erroneous and would work a manifest injustice." *Brown*, 313 S.W.3d at 610 (internal quotation marks and citations omitted). That high standard has not been met here.

Second, a "court is not bound by the doctrine . . . where there has been an intervening change in the law." *Id.* JCPS and SEAP argue *Geron* and *Travis* constitute such an intervening change in the law. We disagree.

First, neither *Geron* nor *Travis* is published, but *Hardin I* is. Unpublished opinions cannot constitute a change in the law because they are not binding precedent, *i.e.*, they do not actually change the law. RAP 40(D)(1)

---

appellate court the law of the case whether right or wrong **and conclusive of the questions therein resolved**." *Newman v. Newman*, 451 S.W.2d 417, 420 (Ky. 1970) (emphasis added). Appellate courts are often required to review a trial court's evidentiary or instructional decisions, which likely explains the context of the holding in *Siler* and cases citing to it, but the law of the case doctrine applies to **all** questions of law resolved in the higher court's opinion – *i.e.*, "the questions therein resolved."

("Opinions designated 'Not To Be Published' are not binding precedent.");

*Johnson v. Commonwealth*, 659 S.W.3d 832, 837 (Ky. App. 2021) ("Moreover, unpublished opinions are not binding precedent, but only persuasive authority."). *Geron* and *Travis* are insufficient to meet the "change in the law" exception to the law of the case doctrine.

Second, despite the parties' arguments to the contrary, there is no true conflict between *Hardin I* and *Geron* and *Travis*.[8]  In *Hardin I*, we did not definitively determine whether there is a right to judicial review of a final decision by SEAP under KRS Chapter 13B.  Indeed, our opinion does not even address KRS Chapter 13B, the usual rubric governing judicial review of administrative decisions.

In *Hardin I*, JCPS argued Hardin's judicial review claim was unripe because he had not exhausted his administrative remedies.  We rejected that argument and directed the trial court on remand to "ascertain the status of Hardin's administrative appeal.  If it has concluded, Hardin's claims related to JCPS' evaluation process may proceed in a manner agreeable to the circuit court and the parties; if it has not concluded, the circuit court shall hold the claims in abeyance until exhaustion has occurred." *Hardin I*, 558 S.W.3d at 10.

---

[8] Even if there were, the law of the case doctrine could still apply.  *See, e.g.*, *Brooks v. Lexington-Fayette Urban Cnty. Housing Authority*, 244 S.W.3d 747, 753 (Ky. App. 2007).

It is undisputed that Hardin has now fully exhausted his administrative remedies, so Hardin's "claims related to JCPS' evaluation process" were required to "proceed in a manner agreeable to the circuit court and the parties . . . ." *Id.* Although reasonable minds could quibble over what "manners" would be agreeable to the circuit court and parties, it is beyond reasonable dispute that dismissing those claims against Hardin's wishes was not "agreeable" to him. There is nothing in *Hardin I* to support a conclusion that Hardin's evaluation process claims were insufficiently pled or were otherwise subject to dismissal under CR 12.02 on remand.

Second, JCPS argued in the prior appeal that "Hardin has no right to appeal the SEAP's decision" because "[n]either the statute (KRS 156.557) nor the regulation (704 KAR 3:345) grants the right to appeal . . . ." *Hardin I*, 558 S.W.3d at 10. But we flatly "reject[ed]" that argument because "Hardin [had] properly invoked the circuit court's inherent authority to judicially review JCPS' allegedly arbitrary administrative actions even absent an express statutory provision granting a right to appeal." [9] *Id.* at 11. That conclusion remains accurate. And binding.

---

[9] Under longstanding Kentucky precedent, a court has the inherent ability to review the actions of an administrative body for arbitrariness even if the General Assembly does not explicitly enact a statute allowing for judicial review. For example, over seventy years ago, Kentucky's then-highest court held that "it is undisputed that courts have the inherent power to prevent an administrative body from proceeding illegally, arbitrarily and capriciously to the injury of another." *Hatch v. Fiscal Court of Fayette Cnty.*, 242 S.W.2d 1018, 1021 (Ky. 1951). Our Supreme Court later reached a similar conclusion, holding that "[j]udicial review does not hinge upon whether the Board has a property or liberty interest at stake, but upon whether the tribunal

-11-

Hardin has sufficiently invoked the court's inherent ability to review for arbitrariness these final administrative actions. The trial court's contrary decision cannot stand.[10]

However, we affirm the trial court's decision to dismiss Hardin's request for judicial review under KRS Chapter 13B. It is undisputed that no statute or administrative regulation permits judicial review under KRS Chapter 13B of a final decision by SEAP. Moreover, we rejected Hardin's arguments in the similar cases of *Geron* and *Travis*. Because our analysis in them resolves many of Hardin's arguments about KRS Chapter 13B, we quote from each at length.

In *Travis*, an assistant principal was demoted to teacher and the demotion was upheld by JCPS' LEAP, a Local Evaluation Appeals Panel, now known as a District Evaluation Appeals Panel, and SEAP. *Travis*, 2019 WL 2068539, at \*1. She sought review of SEAP's decision in the Jefferson Circuit Court, but that court dismissed her petition after concluding that the decisions of

---

or administrative body acted arbitrarily and without substantial evidence. It is well settled in Kentucky that an aggrieved party, including a corporation, has an inherent right to seek judicial review of arbitrary administrative actions." *Reis*, 938 S.W.2d at 885. Under the plain holding of *Reis*, we must reject JCPS' argument that judicial review is prohibited because the actions of JCPS nor SEAP do not impact Hardin's protected property or liberty interests.

[10] The fact that SEAP was added as a defendant on remand does not destroy the applicability of the law of the case doctrine. SEAP's addition as a party did not materially change the relevant underlying facts or core legal issues. Our Supreme Court recently applied the doctrine in similar circumstances. *Armstrong v. Estate of Elmore*, 647 S.W.3d 214, 218 (Ky. 2022).

LEAP and SEAP were not subject to judicial review. *Id.* She appealed but we

affirmed, holding in relevant part:

> Unlike an administrative hearing, the focus of a SEAP review under Kentucky's statutory scheme is not a formal adjudication of a teacher's legal rights, duties, privileges, or immunities. Rather, the SEAP is charged with determining whether "the local school district failed to properly implement the evaluation system." KRS 156.557(7); 704 KAR 3:370 § 12(2)(a). The SEAP cannot adjudicate a teacher's legal rights, duties, privileges, or immunities because, as set forth in KRS 156.557(7), it does not have jurisdiction to review the "judgmental conclusions of [a] personnel evaluation[.]" *See also* 704 KAR 3:370 § 12(2)(a). The SEAP is not authorized to make findings of fact regarding an evaluator's conclusions, nor can it legally find that a teacher was wronged so as to entitle her to reinstatement, back pay, or other monetary remedy. The authority of the SEAP is limited to voiding a personnel evaluation, which then simply allows that teacher to be reevaluated. As such, the SEAP proceeding cannot be characterized as an adjudication of a teacher's legal rights because the result of the proceeding has no substantive impact on the teacher.
>
> . . .
>
> It should be noted that evaluations themselves are not disciplinary in nature. An evaluation does not terminate, demote, suspend, or reprimand. Other documents advise of and execute such discipline, and all are subject to a myriad of procedural due process requirements and include various avenues of appeal. The evaluation appeals process provided Travis the opportunity to submit a rebuttal letter to be placed in her file with the evaluation, to appeal the evaluation to the LEAP, which is required to hold a hearing, and then to appeal the LEAP's decision to the SEAP. In addition to

-13-

the review process in place for an evaluation, KRS Chapter 161 provides procedures by which a teacher can contest adverse employment action, which include the availability of a Chapter 13B hearing before the local board of education, as well as judicial review of any decision . . . . That KRS 156.557 contains no similar provision authorizing judicial review indicates that the General Assembly did not contemplate that SEAP decisions would be subjected to judicial review.

Next, Travis argues that if SEAP is not an administrative agency subject to judicial review then the delegation of authority from the General Assembly to the Kentucky Board of Education contained in KRS 156.557 violates the nondelegation doctrine and is unconstitutional on its face. We find this argument to be wholly without merit . . . . We are of the opinion that the evaluation scheme set forth in KRS 156.557 is not the type of action that falls within the purview of the nondelegation doctrine. As we have previously concluded, the SEAP itself is not an administrative agency. Further, the evaluation process and the SEAP review do not result in an adjudication of a teacher's legal rights. As such, we simply cannot conclude that any delegation of authority to the Kentucky Board of Education to implement the evaluation system results in a violation of the nondelegation doctrine simply because the SEAP decisions are not ordinarily subject to judicial review.

*Id.* at *3-6 (footnotes, citations, and some paragraph breaks omitted). We noted in a footnote, which cited *Hardin I*, that "courts may assume jurisdiction in the absence of statutory authority in order to prevent arbitrary action[,]" but Travis had not raised such an argument. *Id.* at *5 n.6. Obviously, Hardin has made that request.

-14-

*Geron* is factually distinguishable to the extent that it involved a decision to not renew the contract of a non-tenured teacher instead of the demotion of an administrator, but the legal issues are fundamentally the same as those here. After receiving no relief from LEAP or SEAP, the teacher sought judicial review. *Geron*, 2018 WL 8262575, at *1-2. The circuit court dismissed her petition. We affirmed, holding in relevant part:

> Pursuant to KRS 13B.010(2), "'[a]dministrative hearing' or 'hearing' means any type of formal adjudicatory proceeding conducted by an agency as required or permitted by statute or regulation to adjudicate the legal rights, duties, privileges, or immunities of a named person." However, KRS Chapter 13B creates only procedural rights and shall not be construed to confer upon any person a right to hearing not expressly provided by law. Importantly, no express provision for judicial review appears in the statutory framework or administrative regulations related to the SEAP. "There is no appeal to the courts from an action of an administrative agency as a matter of right." *Board of Adjustments of City of Richmond v. Flood*, 581 S.W.2d 1, 2 (Ky. 1978). Thus, unless the SEAP conducts "administrative hearings" the provisions of KRS Chapter 13B do not apply.
>
> Our review reveals SEAP proceedings simply do not constitute "administrative hearings" as envisioned by KRS Chapter 13B. The SEAP is organized pursuant to KRS 156.557(7) which states:
>
> > [t]he Kentucky Board of Education shall establish an appeals procedure for certified school personnel who believe that the local school district failed to properly implement the evaluation system. The appeals

-15-

procedure shall not involve requests from individual certified school personnel members for review of the judgmental conclusions of their personnel evaluations.

The operating procedures for the SEAP are set forth at 704 KAR 3:370 § 12(2)(a) as follows:

[t]he Kentucky Board of Education shall appoint a committee of three (3) state board members to serve on the state evaluation appeals panel (SEAP). The SEAP's jurisdiction shall be limited to procedural matters already addressed by the local appeals panel related to the district's alleged failure to implement an evaluation plan as approved by the department. The SEAP shall not have jurisdiction of a complaint involving the professional judgment conclusion of an evaluation, and the SEAP's review shall be limited to the record of proceedings and documents therein, or lack thereof, at the local district level.

A finding by the SEAP of noncompliance with a district's evaluation plan renders the subject evaluation void. 704 KAR 3:370 § 12(2)(e).

Clearly, the SEAP is a review panel possessing very limited statutorily defined functions, and no provision exists for a hearing officer, the presentation or cross-examination of witnesses or any of the traditional hallmarks of an administrative hearing. The SEAP merely reviews the actions of the LEAP to determine compliance with an approved evaluation plan and thereby provide accountability and encouragement for local districts to implement appropriate evaluation plans. The SEAP is not empowered to reinstate a teacher to a prior position or provide any other remedy apart from setting aside a defective evaluation. Therefore, we conclude the

> SEAP does not conduct "administrative hearings" and actions of the SEAP do not come within the purview of KRS Chapter 13B.
>
> Nevertheless, courts may assume jurisdiction in the absence of a specific statutory authorization to prevent arbitrary action. Arbitrariness occurs in administrative actions when the agency acts in excess of statutory powers, denies due process, or makes a decision unsupported by substantial evidence. In this case the SEAP acted within the powers permitted it by statute and administrative regulation. Geron was permitted due process hearings. Lastly, substantial evidence supported the final decision. Under such circumstances this Court may not substitute its judgment for that of the administrative body. Thus, the decision must stand. We find no reversible error in the trial court's dismissal of Geron's petition.

*Id.* at *3-4 (internal quotation marks, footnotes, and citations omitted).[11]

Of course, though we strive for consistency in our rulings, we are not strictly bound by either *Geron* or *Travis* since each is unpublished. *Johnson v. Commonwealth*, 659 S.W.3d at 837. But we are unpersuaded by any of Hardin's vehement arguments that either decision is incorrect. Therefore, we adopt their core holding: SEAP's final decisions are not subject to judicial review under KRS Chapter 13B. In short, even "if the facts alleged in the [petition] can be proved[,]" Hardin would not be entitled to receive judicial review under Chapter 13B of

---

[11] We do not have the administrative record of the SEAP proceedings before us, so – unlike *Geron* – we express no opinion as to whether its actions were arbitrary. That issue must first be resolved on remand.

-17-

SEAP's decision, so we affirm the trial court's dismissal of Hardin's claim for Chapter 13B judicial review. *Fox*, 317 S.W.3d at 7.

We now turn to Hardin's KRS 161.765-based claim. In *Hardin I*, we held that Hardin "was entitled to the procedural safeguards outlined in KRS 161.765 before being demoted. Taking the contents of Hardin's complaint as true, JCPS failed to afford him those protections. The circuit court erred in finding Hardin failed to state a claim for violation of KRS 161.765." 558 S.W.3d at 8. Nonetheless, the trial court again dismissed Hardin's KRS 161.765 claim on remand. What had materially changed in the interim between our opinion becoming final and the second order of dismissal? Nothing.

Hardin's amended petition incorporated the claims in his previous petition, and the addition of SEAP as a defendant did not substantively change Hardin's position that JCPS failed to comply with KRS 161.765. And neither JCPS nor SEAP expressly addressed the dismissal of this claim in their briefs.

*Hardin I* explicitly concluded that Hardin had presented an adequate claim that his rights under KRS 161.765 had been violated and reversed the trial court's contrary conclusion. It is *exceedingly* difficult to understand why the trial court again dismissed this claim, especially since the dismissal order contained no explanation. Regardless of its silent rationale, the trial court's decision cannot

-18-

stand because it facially conflicts with *Hardin I*.  Thus, we reverse the dismissal of Hardin's claim regarding KRS 161.765.

Finally, a similar result applies to Hardin's age discrimination claim. We unmistakably held that Hardin had "adequately stated a claim for age discrimination . . . ."  *Hardin I*, 558 S.W.3d at 9-10.  His amended petition incorporates the contents of his previous petition, and the parties have pointed to no relevant changes which occurred after the issuance of *Hardin I*. [12]  Tellingly, the Appellees do not address the dismissal of the age discrimination claim here.

Accordingly, it again is *exceedingly* difficult to understand why the trial court chose to perform the same act which we had already determined was improper.  The dismissal of Hardin's age discrimination claim does not comply with *Hardin I*.  Consequently, we must reverse that dismissal.

For the foregoing reasons, the Jefferson Circuit Court is affirmed as to its dismissal of Hardin's request to receive judicial review of SEAP's decision under KRS Chapter 13B.  The Jefferson Circuit Court is otherwise reversed, and the case is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

---

[12] We noted in our original opinion that it was unclear who succeeded Hardin as assistant principal.  Of course, the age of the successor may impact Hardin's age discrimination claim since one element thereof is that Hardin was replaced by a "significantly younger person." *Hardin I*, 558 S.W.3d at 9.  The identity of that successor is still unclear as the parties have not pointed us to where in the record the successor's age is discussed.  Also, the addition of SEAP as a defendant had no obvious impact on the age discrimination claim.

-19-

BRIEFS FOR APPELLANT:

Peter J. Jannace
Louisville, Kentucky

BRIEF FOR APPELLEES
JEFFERSON COUNTY BOARD OF
EDUCATION D/B/A JEFFERSON
COUNTY PUBLIC SCHOOLS, DR.
DONNA M. HARGENS, DR.
MICHAEL RAISOR, DIANE L.
PORTER, DEBBIE WESSLUND,
DAVID A. JONES, JR. CHUCK
HADDAWAY, LINDA DUNCAN,
CAROL ANN HADDAD AND
CHRIS BRADY:

C. Tyson Gorman
Marianna J. Michael
Louisville, Kentucky

BRIEF FOR STATE EVALUATION
APPEALS PANEL, KENTUCKY
BOARD OF EDUCATION,
KENTUCKY DEPARTMENT OF
EDUCATION, EDUCATION AND
WORKFORCE DEVELOPMENT
CABINET:

Ashley Lant
Frankfort, Kentucky